Commonwealth, Appellant, *v.* Eastman Kodak Company.

Argued May 21, 1956. Before Stern, C. J., Jones, Bell, Chidsey, Musmanno and Arnold, JJ.

*Edward Friedman,* Deputy Attorney General, with him *Herbert B. Cohen,* Attorney General, for appellant.

*Sanford D. Beecher,* with him *Duane, Morris & Heckscher,* for appellee.

Opinion by Mr. Justice Bell, June 25, 1956:

The Commonwealth sought to tax defendant, a foreign corporation engaged in interstate commerce, on its net income for the year 1951 under the Corporation Income Tax Law of (December 27) 1951.* The lower Court held that the resettlement and imposition of the tax by the fiscal officers of the Commonwealth violated the Interstate Commerce Clause since it imposed a tax on the defendant's privilege of engaging in interstate

---

* P. L. 1763, 72 PS 3420n.

commerce. From a judgment entered in favor of Eastman Kodak Company the Commonwealth has appealed.

Defendant is a business corporation which is engaged in interstate commerce. It is organized under the laws of New Jersey and has its business office and manufacturing plant in Rochester, N. Y. It is engaged in the business of manufacturing and selling photographic equipment and supplies and certain other products. All manufacturing of business products and research activities are performed wholly outside of Pennsylvania. It maintains no office or place of business in Pennsylvania; it is not registered to do business in Pennsylvania; it makes no contracts in Pennsylvania. All of its assets are owned, held and used by it wholly outside of Pennsylvania, with the exception of 10 automobiles which are used by defendant's employes who solicit business mostly in Pennsylvania. Five of those automobiles were used regularly in Pennsylvania by defendant's salesmen; the remainder were used partly in Pennsylvania and partly in other States. Those 10 automobiles, valued at $13,569., were the only tangible property of the defendant located in Pennsylvania.* The value of all tangible and intangible property and real estate of the defendant outside of Pennsylvania was $533,370,496.

Defendant employed, in the year 1951, three salesmen who resided in Pennsylvania, one of whom performed all of his services in Pennsylvania; and 11 technical representatives who resided in Pennsylvania and who demonstrated to dealers and other users of photographic products the proper method of using defendant's products. Four of these employes performed all

---

* Under the Act of May 1, 1929, P. L. 905, Article IV, §401 (a) (c), as amended: 75 PS §91, known as The Vehicle Code, these automobiles were required to be registered and licensed in Pennsylvania.

their services in Pennsylvania; the other 7 performed their services in Pennsylvania and in other States. In every instance defendant's products were shipped by mail or by common carrier into Pennsylvania from outside the State. All of Eastman's employes who perform any services in Pennsylvania are connected with and sent out, and all of their activities are supervised and directed from premises for the transaction of business maintained by Eastman in New York City and Rochester, N. Y.

The principles in this fertile field of taxation of interstate commerce are easy to state, but often very difficult to apply. It has been aptly described as a field of "nice distinctions": *Keystone Metal Co. v. Pittsburgh*, 374 Pa. 323, 327, 97 A. 2d 797; *McLeod v. Dilworth Co.*, 322 U.S. 327, 329; *Galveston, H., & S. A. Ry. Co. v. Texas*, 210 U.S. 217, 225.

The Corporation Income Tax Law of 1951 is a "catch-all" Act which seeks to impose a so-called property tax on the net income of a corporation based on a three-fold formula, viz., all tangible property in Pennsylvania; all wages which are "assignable" to Pennsylvania; and all gross receipts from "property and activities" "assignable" to this Commonwealth "excluding income for which the corporation is subject to taxation under the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, as amended. The true nature of the tax is apparent from the following provisions of the Act: "A rule shall not be deemed to be inapplicable merely because all the tangible property or the expenditures of a corporation for wages, salaries, commissions, or other compensation, or the gross receipts of the corporation are found to be situated, incurred, or received without the Commonwealth."

In *Roy Stone Transfer Corporation v. Messner*, 377 Pa. 234, 103 A. 2d 700, we held the Corporation Income

Tax Law of 1951 was unconstitutional as applied to the plaintiff in that case in that it violated Article I, §8 (3) of the Constitution of the United States—the Interstate Commerce Clause. In that case plaintiff was a foreign corporation which was engaged in the transportation of property as a common carrier in interstate commerce; it had no tangible or intangible property in Pennsylvania; it paid no wages in Pennsylvania; it made no contracts in Pennsylvania; and it had no employes doing any kind of work in Pennsylvania except driving its trucks in interstate commerce. All of the factors present in the *Roy Stone* case are present here, except that Eastman owns 10 automobiles located in Pennsylvania and several of its representatives demonstrate to dealers and other users of photographic products in Pennsylvania the proper method of using defendant's products. We do not consider these additional factors sufficient to constitute local activities within the meaning of the decided cases. The distinction between the Act of 1935, which taxes the net income of corporations which have tangible property in Pennsylvania or are engaged in local activities in Pennsylvania, and the Act of 1951, was pointed out in the *Roy Stone* case on page 239 of that opinion: "While each formula has the same three factors—tangible property in Pennsylvania, wages paid, and gross receipts— under the 1935 Act the wages paid are applicable to persons employed in Pennsylvania and the gross receipts are likewise restricted to receipts from business conducted in Pennsylvania; whereas the 1951 Act applies to and includes wages payable to *employees employed outside of Pennsylvania which may be attributable to the work they perform in Pennsylvania,** and the gross receipts to business *attributable* to Pennsyl-

---

* Italics ours.

vania, *but negotiated or performed by persons employed outside of Pennsylvania.*

"The Corporate Net Income Tax Act of 1935 imposing a tax on the net income of a corporation based upon its tangible property in Pennsylvania and the wages paid to its employees in Pennsylvania, and that part of its gross receipts attributable to business carried on within Pennsylvania, was declared to be a property tax in spite of the declaration in the Act that it was an excise tax; and as such, its Constitutionality was sustained: Blauner's, Inc. v. Philadelphia, 330 Pa. 342, 345, 198 A. 889; National Biscuit Co. v. Philadelphia, 374 Pa. 604, 612, 98 A. 2d 182; Murray v. Philadelphia, 364 Pa. 157, 169, 71 A. 2d 280; Philadelphia v. Samuels, 338 Pa. 321, 326, 12 A. 2d 79; see also to the same effect, Kelley v. Kalodner, 320 Pa. 180, 181 A. 598."

. . .

The Corporation Income Tax Law of 1951 states that it imposes a property tax on net income of certain corporations. While this declaration is entitled to weight, the nature of a tax depends upon its incidence, not upon its label. If, therefore, in reality, i.e., in its practical operation and effect, the tax is not what it purports to be, the realities control. *Railway Express Agency, Inc. v. Virginia,* 347 U.S. 359; *Spector Motor Service, Inc. v. O'Connor,* 340 U.S. 602, 608; *Dawson v. Kentucky Distilleries Co.,* 255 U.S. 288, 292; *Interstate Transit, Inc. v. Lindsey,* 283 U.S. 183, 190; *Memphis Steam Laundry v. Stone,* 342 U.S. 389; *Roy Stone Transfer Corp. v. Messner,* 377 Pa., supra; *Murray v. Philadelphia,* 364 Pa. 157, 71 A. 2d 280; *Armour & Company v Pittsburgh,* 363 Pa. 109, 112, 69 A. 2d 405; *Arrott's Estate,* 322 Pa. 367, 185 A. 697; *National Biscuit Co. v. Philadelphia,* 374 Pa. 604, 615, 98 A. 2d 182.

The *Roy Stone* case analyzed and reviewed many de-

cisions of the Supreme Court and several of this Court and then summarized the pertinent principles: "1. A State may not impose a tax on interstate commerce or the receipts therefrom or the privilege of carrying it on. 2. A State may impose and collect taxes on corporations engaged exclusively in interstate commerce under the following conditions: (a) The tax must be predicated upon the ownership of property within the taxing State, *or upon local activities which occur within the State and are not an integral or realistically inseparable part of interstate commerce.** (b) The property or activity taxed must be of such a local nature that it may not become the object of multiple State taxation. (c) The tax must be fair and reasonable and there must be no discrimination between corporations engaged in interstate and intrastate commerce."

In *Norton Company v. Illinois,* 340 U.S. 534, the constitutionality of an Illinois gross receipts business or occupation tax " 'upon persons engaged in the business of selling tangible personal property at retail in this State' " was determined by the Supreme Court. Norton Company, a Massachusetts corporation, operated a branch office and a warehouse in Chicago, from which it made local sales at retail. The Chicago place of business carried a large inventory and consummated therefrom direct sales to people in Illinois. It also acted to reduce freight costs to local consumers and took orders for merchandise which it did not have in the local store. The local office likewise performed services helpful in Norton's competition for Illinois trade. The Court sustained the tax as applied to sales of goods shipped from a foreign State to taxpayer's retail store in Chicago and there sold to Illinois customers, but held it unconstitutional as to shipments made

---

* Italics ours.

direct to customers by mail or common carrier. The Court said (page 537) : "Where a corporation chooses to stay at home in all respects except to send abroad advertising or drummers to solicit orders which are sent directly to the home office for acceptance, filling, and delivery back to the buyer, it is obvious that the State of the buyer has no local grip on the seller. Unless some local incident occurs sufficient to bring the transaction within its taxing power, the vendor is not taxable. McLeod v. Dilworth Co., 322 U.S. 327 [sales tax]. Of course, a state imposing a sales or use tax can more easily meet this burden, because the impact of those taxes is on the local buyer or user. Cases involving them are not controlling here, for this tax falls on the vendor."

As the Supreme Court said in *Michigan-Wisconsin Pipe Line Co. v. Calvert*, 347 U.S. 157: "It is now well settled that a tax on a local activity related to inter-interstate commerce is valid if, and only *if, the local activity is not such an integral part of the interstate process, the flow of commerce, that it cannot realistically be separated from it.* Memphis Natural Gas Co. v. Stone, 335 U.S. 80, 87 (1948) ; Western Livestock v. Bureau of Revenue, supra at 258."

The Commonwealth resettled or determined defendant's tax under the Corporation Income Tax Law of 1951 under its threefold formula: (1) it took as the numerator of its first part the tangible personal property, viz., $13,569., located in Pennsylvania, and as its denominator the value of all defendant's tangible property wherever situate, namely, $288,639,729. (2) The numerator of its second fraction represented the expenditures of defendant for wages, salaries, commissions, and other compensation paid by it *at its home*

* Italics ours.

*office* to its employes "attributable" or assignable to the extent of services rendered or work performed in Pennsylvania. The denominator of the said fraction represented the total of all such expenditures to all of defendant's employes. (3) The numerator of the third or gross receipts fraction represented defendant's gross receipts from sales to Pennsylvania customers solicited by defendant's salesmen in Pennsylvania, all of whose work or activities were supervised and directed from offices outside of Pennsylvania and contracts for the said sales were made outside of Pennsylvania. The denominator of the said fraction represented the amount of defendant's gross receipts from all defendant's activities and business everywhere. The total taxable income determined by the Commonwealth was $115,975.57 and the tax (at the rate of 5%) amounted to $5798.78.

Notwithstanding the fact that the Act seeks to impose what it calls a property tax, it is clear that the tax, at least as far as the present defendant is concerned, is an excise tax for the privilege of doing business in Pennsylvania. Cf. *Roy Stone Transfer Corp. v. Messner*, 377 Pa., supra. The formula which the Commonwealth applies to this defendant makes crystal clear, if it were not otherwise so, that this tax is not a property tax on the local property of defendant, namely, ten automobiles or on the income from local activities as such—it is an attempted excise tax on defendant's interstate commerce business out of which there were no local activities which could be considered as not an integral or realistically inseparable part of interstate commerce.

This case is ruled by *Roy Stone Transfer Corp. v. Messner*, 377 Pa., supra, and the cases therein cited; *Michigan-Wisconsin Pipe Line Co. v. Calvert*, 347 U.S., supra; *Joseph v. Carter & Weekes Stevedoring Company,*

330 U.S. 422; *Railway Express Agency, Inc. v. Virginia,* 347 U.S. 359. In *Railway Express Agency, Inc. v. Virginia,* 347 U.S., supra, the Court declared unconstitutional a Virginia statute attempting to impose a gross receipts tax upon express companies engaged in interstate commerce. The Court said, inter alia: "This appeal from the Supreme Court of Appeals of Virginia presents another variation in the seemingly endless problems raised by efforts of the several states to tax commerce as it moves among them. . . . Virginia provides by statute a separate and detailed system of taxation for express companies. It allocates to state taxation, free of all local levies, two kinds of property, viz., tangible personal property and money. It sets off real estate and tangible personal property for local levies at the same rates as other similar properties. These, taxable at different rates, are all included in the statute under the rubric 'Taxes on property of express companies.' Then follows a section headed 'Annual license tax' providing that 'for the privilege of doing business in this State' express companies shall pay 'in addition to . . . the property tax as herein provided' an 'annual license tax' upon gross receipts *earned in the State*\* 'on business passing through, into or out of the state.'

. . .

"The State counters with the contention that we should regard this, not as a privilege tax, even though it was labeled as such by the statute imposing it, but, instead, as a property tax measured by gross income and laid on the intangible value of good-will or going-concern status. The Corporation Commission said that the physical properties were assessed at dead value or bare-bones value for local taxation, while here the 'live, or going concern value' is being separately taxed by the

---

\* Italics ours.

State 'for the protection and services rendered by it.' . . . 'neither the state courts nor the legislatures, by giving the tax a particular name or by the use of some form of words, can take away our duty to consider its nature and effect,' Galveston, H. & S. A. R. Co. v. Texas, 210 U.S. 217, 227, in which inquiry 'we are concerned only with its practical operation.' Lawrence v. State Tax Comm'n, 286 U.S. 276, 280. See Wisconsin v. J. C. Penney Co., 311 U.S. 435, 443-444.

". . . the practical effect of the tax conforms to its statutory description as one whose impact is squarely upon gross receipts without consideration of their effect on the value of any of the classes of property recognized elsewhere in the statute. A summary of appellant's total taxation for 1951 will illustrate this point. . . .

"Appellant's tax, under the questioned portion of the statute, amounted to $66,454.71, so that its tax on a gross-receipts basis was over fifty percent of the total value of its real and tangible personal property.* . . .

". . . But the tax in dispute here does not depend on owning any physical property, nor upon the value thereof, but would be levied on gross revenues even if the company found some way to dispense with all local, physical property." This language is equally applicable to the instant case.

We have so recently analyzed in *Roy Stone Transfer Corporation v. Messner*, 377 Pa., supra, the case of *Memphis Natural Gas Co. v. Stone*, 335 U.S. 80, *West Publishing Co. v. McColgan*, 328 U.S. 823, and other cases relied upon by appellant, which are clearly inapplicable, that we do not consider it necessary to do

---

* In the instant case the total value of all of defendant's property in Pennsylvania, viz., ten automobiles, was only $13,569., but the tax at 5% amounted to $5,798.78.

more than reiterate that in those cases the tangible property located in the State and the many local activities and services carried on within the State distinguish them from the instant case.

For the foregoing reasons, we hold that the Corporation Income Tax Law of 1951 in its application to this defendant is a violation of the Interstate Commerce Clause and therefore unconstitutional.

Judgment affirmed.