## Commonwealth v. United States Tobacco Co.

*Thomas D. McBride*, Attorney General, and *Edward Friedman*, Deputy Attorney General, for Commonwealth.

*Rhoads, Sinon & Reader*, for defendant.

NEELY, J., November 25, 1957.—This matter is before us on the Commonwealth's exceptions to our opinion of March 26, 1957, 70 Dauph. 217 (1957). In this opinion we held that the Corporation Income Tax Law of August 24, 1951, P. L. 1417, as reënacted and amended by the Act of December 27, 1951, P. L. 1763, 72 PS Pkt. Parts 3420n-1, is inapplicable to this de-

fendant because it was an attempt to levy a tax for the year 1952 on defendant's privilege of engaging in interstate commerce.

Defendant taxpayer, a New Jersey corporation with its principal office in New York City, manufactures tobacco products outside of the State and ships the same to its customers in Pennsylvania in interstate commerce. Defendant engages in no intrastate commerce. In our opinion we set forth our findings, conclusions and the supporting reasons for our order directing that judgment nisi should be entered against the Commonwealth in this case.

The Act of 1951 imposed a tax on the local activities of corporations engaged in interstate commerce. Where a corporation is engaged exclusively in interstate commerce, the tax can only be levied under this act on its activities which are local in their character and separated from its interstate commerce, i.e., on the purely local incidents of its interstate commerce.

In our opinion of March 26, we stated the proposition as follows: "The question involved in the instant case is whether the defendant taxpayer is engaged in such local and realistically separable activities in Pennsylvania as to render it liable for this tax." Cf. Roy Stone Transfer Corporation v. Messner, 377 Pa. 234 (1954) ; Commonwealth v. Eastman Kodak Company, 385 Pa. 607 (1956), 67 Dauph. 288 (1955), 68 Dauph. 324 (1955). We held that "the defendant's activities performed by its representatives in Pennsylvania are an inseparable part of the interstate commerce in which they are engaged," and made the following conclusions of law:

"1. The Corporation Income Tax Law (1951 . . ., in its application to this defendant is in violation of the Commerce Clause, Article 1, §8, of the Federal Constitution, and therefore unconstitutional.

"2. In its application to this defendant, the tax (imposed under the Act of 1951) is invalid as being imposed on the defendant's privilege of engaging in interstate commerce."

We entered the following order:

"And now, March 26, 1957, judgment is hereby directed to be entered against the Commonwealth of Pennsylvania and in favor of the United States Tobacco Company, defendant, unless exceptions be filed within the time allowed by law."

The Commonwealth has filed four exceptions to our opinion, namely, that:

(1) We erred in stating that defendant has no inventory of its manufactured products in Pennsylvania.

(2) We erred in our first conclusion of law.

(3) We were in error in our second conclusion of law.

(4) And we were in error in entering judgment nisi for defendant.

It is the contention of the Commonwealth in support of these exceptions that the activities of defendant's representatives in Pennsylvania are not an inseparable or integral part of its interstate commerce and are therefore taxable under the Act of 1951.

In our judgment, nothing has been submitted by the Commonwealth, either in its brief or at the oral argument, in support of these exceptions to indicate that our opinion is in error. We believe that the instant case is ruled by the Supreme Court's decision in the Eastman Kodak case, 385 Pa. 607, supra. The Supreme Court held in the Eastman case that in its application to that taxpayer the Act of 1951 "is an excise tax for the privilege of doing business in Pennsylvania." The court held that the imposition of the tax upon defendant amounted to "an attempted excise tax

on defendant's interstate commerce business out of which there were no local activities which could be considered as not an integral or realistically inseparable part of interstate commerce." See 385 Pa., supra, at page 615. The court invalidated the tax in its application to the taxpayer.

In the Eastman case the taxpayer manufactured photographic equipment and supplies and shipped the same into Pennsylvania on orders solicited here. In the instant case defendant's manufactured tobacco products are shipped into Pennsylvania from outside the State, 90 percent on orders of customers, the balance being accounted for, in part at least, by orders from its representatives here.

In addition to a field manager and three division managers, there were in 1952 eight so-called "missionary representatives" located within the Commonwealth. Each of these 12 employes was a resident of Pennsylvania and was furnished with an automobile registered with our Secretary of Revenue for use in defendant's business here.

These so-called "missionary representatives" were employed in this State to promote sales of defendant's products. Occasionally they filled orders for defendant's merchandise, checked jobbers' stocks, promoted sales with retailers, dressed- and decorated windows, inspected retailers' stocks and placed highway posters.

The Commonwealth contends that the activities of these missionary men in one field in particular are essentially local and therefore separable from defendant's interstate commerce. These eight representatives were each furnished by defendant with sums of cash up to $200 which they could use to replenish retail dealers' stocks of merchandise. They would purchase this stock from local jobbers and sell it to these dealers at the same price, or give it away as free samples. It

is stipulated that this was a promotional activity from which defendant received no financial profit,* except as generally to promote sales.

The solution of the question as to whether a State tax on transactions having interstate attributes falls within permissible limits depends upon whether there are sufficient local incidents or activities to validate the tax: Wieman and Ward Company v. Pittsburgh, 381 Pa. 535 (1955); Keystone Metal Company v. Pittsburgh, 374 Pa. 323 (1953). To us it seems clear that these purchases and sales at no financial profit and the gift of free samples, when considered in the light of all the activities of the missionary representatives, are insufficient local incidents to validate this tax in its application to the defendant. Cf. United Piece Dye Works v. Joseph, 121 N. Y. S. 2d 683 (Sup. Ct., Appellate Division N. Y. 1953), aff'd. 307 N. Y. 780, certiorari denied 348 U. S. 916 (1955); United Air Lines, Inc., v. Joseph, 121 N. Y. S. 2d 692 (Sup. Ct., Appellate Division N. Y. 1953), aff'd. 307 N. Y. 762 (1954).

In both of these New York cases, the taxpayers were engaged in interstate commerce. The City of New York attempted to impose a gross receipts tax for the privilege of doing business in New York City. In both cases the activities conducted by the taxpayer within

---

\* Paragraph 10 of the stipulation reads as follows:

"10. The representatives of the Defendant regularly have on hand small quantities of Defendant's products which are acquired for cash from local jobbers in tobacco products. Said quantities are regularly sold to retail dealers as an accommodation in connection with Defendant's promotional activities at the same price as paid to the jobbers by Defendant and said quantities are also used in giving free samples thereof to the public. The exact amount of such products regularly in the hands of each of Defendant's representatives is small and unascertainable. Each of Defendant's representatives at all times has not more than $200.00 worth of Defendant's products in his possession."

New York City were much more extensive than those in which defendant's missionary representatives engaged in this case. In neither of these cases, however, were the taxpayer's activities considered as separate and distinct from its interstate operations, and were held to be immune from taxation by the City of New York.

To the same effect also is the decision of the Supreme Court of Alabama holding that extensive activities carried on within the State of Alabama by a taxpayer in connection with its interstate commerce were not such local and incidental activities as to be taxable by that State: State v. Plantation Pipe Line Company, 265 Ala. 69, 89 Southern 2d 549, certiorari denied 352 U. S. 943 (1956).

In our opinion of March 26 we pointed out the close factual analogy between this case and the Eastman case. It would serve no useful purpose to repeat what we there said, except possibly to emphasize that the use of Eastman's equipment in Pennsylvania for the purpose of demonstrations to customers was not considered a local incident. By the same token, we believe that the replenishing of dealers' stocks and the giving away of free samples in order to promote defendant's interstate sales are not mere local incidents, but on the contrary are part of the interstate process. At least, they are not incidents sufficient in themselves to bring the tax in this case within the permissible limits of State taxation of interstate commerce.

Missionary men in a sense are the modern prototypes of the old fashioned drummer, and in a long line of cases it has been held that the drummer's solicitation of business is an inseparable part of the interstate commerce in which he is involved. See Memphis Steam Laundry Cleaner, Inc., v. Stone, 342 U. S. 389, 392, 393 (1952); Robbins v. Shelby County Taxing Dis-

trict, 120 U. S. 489 (1887) ; Corson v. Maryland, 120 U. S. 502 (1887) ; Asher v. Texas, 128 U. S. 129 (1888) ; Stoutenburgh v. Hennick, 129 U. S. 141 (1889) ; Brennan v. Titusville, 153 U. S. 289 (1894) ; Stockard v. Morgan, 185 U. S. 27 (1902) ; Caldwell v. North Carolina, 187 U. S. 622 (1903) ; Rearick v. Pennsylvania, 203 U. S. 507 (1906) ; International Textbook Company v. Pigg, 217 U. S. 91 (1910) ; Dozier v. State of Alabama, 218 U. S. 124 (1910) ; Rogers v. State of Arkansas, 227 U. S. 401 (1913) ; Stewart v. People of the State of Michigan, 232 U. S. 665 (1914) ; Davis v. Commonwealth of Virginia, 236 U. S. 697 (1915) ; Cheney Brothers Company v. Commonwealth of Massachusetts, 246 U. S. 147 (1918) ; Real Silk Hosiery Mills v. City of Portland, 268 U. S. 325 (1925) ; Best & Company, Inc., v. Maxwell, 311 U. S. 454 (1940) ; Nippert v. City of Richmond, 327 U. S. 416 (1946) ; Norton Company v. Department of Revenue of Illinois, 340 U. S. 534 (1951).

The Commonwealth contends further, however, that we were in error in our opinion in stating that "the defendant has no inventory of its manufactured products in Pennsylvania." The statement, we believe, is amply supported by the evidence in this case.

" 'The word (inventory) has a well-defined meaning in commercial circles, and is used to designate articles of merchandise or personal property, that the same may be distinguished without any attempt to describe in detail the properties of each article' ": 22 Words and Phrases, page 224.

In Black's Law Dictionary, Third Edition, page 1006, "inventory" is defined as follows:

"INVENTORY. A detailed list of articles of property; a list or schedule of property, containing a designation or description of each specific article; an itemized list of the various articles constituting a collection,

estate, stock in trade, etc., with their estimated or actual values."

In Mertens, Vol. II, Law of Federal Income Taxation, chapter 16, page 51, there is the following reference to "inventory":

"The Regulations . . . have been interpreted to require that merchandise, to be included in an inventory, must be held for sale at a profit; if held for sale at cost to win the good will of purchasers it may not be included in inventory."

The Court in Francisco Sugar Co. v. Commissioner of Internal Revenue, 47 F. 2d 555 (CCA-2nd Circuit 1931), was considering what goods should be included in inventory for Federal income and excise profit tax purposes, and at page 557, it held that the term "inventory" contemplated goods held by a manufacturing company for sale at a profit.

Clearly, there was here no attempt by this defendant to designate articles of merchandise or personal property as being stocks of defendant held for sale at profit. These sales to retail dealers without profit and the gifts of samples were obviously intended to promote defendant's interstate business. It is unlikely indeed that there were any extensive accumulations of stocks in the hands of the missionary representatives. In any event, the extent of the accumulations is unascertainable, according to the stipulation of the parties. Hence, we believe the record does not show any inventory within the accepted meaning of that term maintained by defendant in Pennsylvania, and for that reason our observations concerning the inventory were valid.

For the foregoing reasons, we feel that the Commonwealth is not entitled to prevail in its contention that our opinion of March 26, 1957, is in error. The Commonwealth's exceptions must be overruled, and accordingly therefore we enter the following

*Order*

And now, November 25, 1957, the four exceptions of the Commonwealth are severally overruled; judgment is herewith entered against the Commonwealth of Pennsylvania and in favor of United States Tobacco Company, defendant herein.