## Advance-Wilson Industries, Inc. *v.* Commonwealth.

Argued September 11, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Bernard Eisen,* with him *Berkman, Ruslander, Pohl, Lieber & Engel,* for appellant.

*Edward T. Baker,* Deputy Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., November 30, 1972:

This is an appeal from a decision of the Board of Finance and Revenue sustaining a settlement of Corporate Net Income Tax made against appellant for the fiscal year ended December 31, 1966 by the Department of Revenue and the Department of Auditor General. Appellant, a Delaware corporation authorized to do business in Pennsylvania, filed its Corporate Net Income Tax Report for the fiscal year ended December 31, 1966 admitting tax due in the amount of $11,-850.38. The Department of Revenue settled and the Department of Auditor General approved such settlement which determined the tax due as $24,408.43. In arriving at this figure appellant's entire taxable income as reported for Federal Income Tax purposes was used which included income from its operations outside of Pennsylvania.

Appellant filed a Petition for Resettlement and subsequently a Petition for Review with the Board of Finance and Revenue. Both of those petitions were refused and the appeal now lies with this Court.[1] An agreement to try without a jury and a partial stipulation of facts was entered into and additional testimony was adduced at an evidentiary hearing before this Court.

### FINDINGS OF FACT

(1) Appellant is a holding company which has two operating divisions, Keystone Ridgeway Company and Electrolyzing Company.

---

[1] The appeal is taken pursuant to Act of April 9, 1929, P. L. 343, §1104, as amended, 72 P.S. §1104. It was filed in the Dauphin County Court of Common Pleas and transferred to this Court.

(2) The Keystone Ridgeway Company division operates three plants in Pennsylvania which are engaged in the manufacture and sale of ceramic tiles used in building construction, bathrooms and any place that might require flooring of a waterproof nature.

(3) The Certificate of Authority issued by the Commonwealth of Pennsylvania to the appellant as a foreign corporation permits appellant "to purchase, lease, produce, manufacture, sell and generally deal in and with building materials of all kinds."

(4) The Electrolyzing Company division maintains places of business in Illinois and Rhode Island and conducts business throughout the United States. The business of this division is to receive machines or machine parts, equipment and tools which are subject to wear abrasion and, by the electrolyzing process, plate the parts in order to increase their useful longevity.

(5) The Certificate of Authority issued to appellant as a foreign corporation by the State of Illinois states the purposes for the transaction of business in the state to be: "To engage in the business of manufacturing, exploiting, producing, assembling, maintaining, processing, cleaning, milling, machining, repairing, improving, procuring, purchasing, disposing, selling and distributing of machines, equipment and tools of every kind and description and other goods, wares and products."

(6) There is no money flow, no transfer of working capital, no intradivision sales or purchases or no accounting transactions between Keystone and Electrolyzing.

(7) There is no combined advertising or promotion program nor is there any common profit sharing or pension plan between Keystone and Electrolyzing.

(8) No employe of either division performs any function for the other.

(9) There is no guarantee by either division of the indebtedness of the other.

(10) There is no interaction of the sales or purchasing departments between divisions.

### DISCUSSION

The issue in this case is whether income generated from appellant's operation of the Electrolyzing division can be included in determining appellant's corporate net income tax owed to the Commonwealth. Act of May 16, 1935, P. L. 208, §2, as amended, 72 P.S. §3420 (b) provides in part: "Where a corporation in any tax year beginning on or after the first day of January, one thousand nine hundred fifty-six, engages in a separate business outside of Pennsylvania, or owns property having a situs outside of Pennsylvania which business or property bears no relation to the exercise of the Pennsylvania franchise, the department, with the approval of the Auditor General, may determine the base for the tax imposed by this act for the tax year by excluding from the net income of such corporation as returned to and ascertained by the federal government, the net income from the business or property which bears no relation to the exercise of the Pennsylvania franchise."

The Commonwealth contends that the appellant has not met its burden of proving that it is entitled to a multiform tax settlement for the year in question and, as a corollary to that contention, argues that the defendant's operation is unitary rather than multiform because both divisions advance money for expenses to the home office and because the Electrolyzing division transacts some business in Pennsylvania.

Application of the corporate net income tax to the defendant on a multiform basis would require that this Court recognize that the defendant conducts two distinct and unrelated activities, the one its Keystone op-

eration in Pennsylvania, and the other its Electrolyzing operation in Illinois and Rhode Island. *Commonwealth v. American Tel. & Tel. Co.*, 382 Pa. 509, 514, 115 A. 2d 373 (1955). In a multiform situation, exclusion of income is allowed because the taxpayer is engaged in a separate business outside of Pennsylvania. *Commonwealth v. ACF Industries, Inc.*, 441 Pa. 129, 135, 271 A. 2d 273 (1970); *Morewood Realty Corp. v. Commonwealth of Pennsylvania*, 6 Pa. Commonwealth Ct. 244, 250, 253, A. 2d (1972). The purpose of this multiform concept as stated by former Chief Justice STERN in *American Tel. & Tel., supra* at 515, is to avoid an impermissible taxation of value or income by Pennsylvania and to insure that the allocation of taxable value to Pennsylvania bears a fair relation to the amount of local business done by the corporation within the state. Mr. Justice COHEN, writing for a majority in *ACF Industries, supra* at 142-143, delineated the principle to be applied in a multiform situation. "First, if a multistate business enterprise is conducted in a way that one, some or all of the business operations outside Pennsylvania are independent of and do not contribute to the business operations within this State, the factors attributable to the outside activity may be excluded.

"Second, in applying the foregoing principle to a particular case, we must focus upon the relationship between the Pennsylvania activity and the outside one, not the common relationship between these and the central corporate structure. Only if the impact of the latter on the operating units or activities is so pervasive as to negate any claim that they function independently from each other do we deny exclusion in this context.

"Third, without attempting to preclude exclusion in any given case, we reiterate our statement above that the manufacturing, wholesaling and retailing (or man-

ufacturing and selling) activities of a single enterprise are not fit subjects for division and partial exclusion. On the other hand, a truly divisionalized business, conducting disparate activities with each division internally integrated with respect to manufacturing and selling, may well be in a position to make a valid claim for exclusion."

In applying these principles to the facts of the instant case, we conclude that the income generated from the operation of the Electrolyzing division may not be included in determining the Corporate Net Income Tax due.

With regard to the issue of advancement by the divisions of charges for expenses, our Supreme Court has held that "contributions of unrelated activities to the corporate whole do not vitiate a claim for exclusion, that it is the interrelationship between the activities themselves which is the critical factor." *ACF Industries, supra* at 139; *Commonwealth v. Kirky Estates, Inc.,* 432 Pa. 103, 246 A. 2d 120 (1968); *Commonwealth v. Quaker Oats Company,* 350 Pa. 253, 38 A. 2d 325 (1944). This is a situation in which "a corporation conducts diverse forms of business having no unity save unity of ownership, and no common relation save by separate contributions to the total revenue of the corporation." *Quaker Oats, supra* at 257.

As recognized by our Supreme Court in *ACF Industries, supra,* the classic multiform corporate net income tax case is *Commonwealth v. Baker-Whitely Coal Co.,* 60 Dauph. 434 (1950). That case involves a West Virginia corporation which engaged in the business of mining coal in Pennsylvania. The corporation also conducted a tugboat operation in Maryland in which a small amount of the Pennsylvania mined coal was used. Home office expenses were charged to the two divisions by the home office on a pro rata basis. Terming the use of the coal by the tugboat operation as "de mini-

mis," the court there held the two businesses were completely separate in operation and excluded from Pennsylvania tax the net income derived from the tugboat operation. Our Supreme Court in *ACF Industries* approved of this decision as did this Court in *Morewood Realty Corp., supra.* Both of the elements which the Commonwealth contends are fatal to the appellant's claim for multiform consideration were present there. There was advancement by the divisions of home office expense money to the home office; and also business although a minimal amount, was conducted by the Maryland operation with the Pennsylvania operation when coal was used in the tugboat operation.

Perhaps the most illustrative case of a multiform exclusion when one division was doing business in the same state as the other is *Commonwealth v. Mundy,* 346 Pa. 482, 30 A. 2d 878 (1943). In that case the Commonwealth settled the taxpayer's franchise tax[2] by including in the value of the Delaware taxpayer's capital stock certain securities held by it as an investment but not used in its general real estate business. The corporation was registered in Pennsylvania to do "a general real estate business by buying and selling real estate and constructing buildings and erecting buildings." *Mundy, supra* at 483. The taxpayer's only office was in Pennsylvania, the securities were kept in Pennsylvania and all income was deposited in Pennsylvania bank accounts. Nevertheless, the court there found that the investment business conducted by the taxpayer in Pennsylvania had no function in the conduct of appellee's real estate business and held that the Commonwealth could not levy a "capital stock tax or a franchise tax upon securities held and owned by a foreign corporation doing business in Pennsylvania,

---

[2] *ACF Industries, supra* at 134 determined that franchise tax and corporate net income tax problems involve the same principles.

which have no fair relation to the value of the franchise enjoyed by the corporation in this state." *Mundy, supra* at 484.

The rule of *Mundy* was further clarified in *Commonwealth v. Eagles' Corporation,* 56 Dauph. 227 (1945), which also involved Delaware corporation conducting a real estate business and holding securities for investment, all in Pennsylvania. The court there held for the Commonwealth because the certificate of authority granted to the corporation by Pennsylvania authorized an investment business as well as a real estate business whereas the certificate in *Mundy* authorized only a real estate business. That distinction was critical according to *ACF Industries, supra* at 141.

The certificate of authority in the instant case provides no such distinction from the *Mundy* case and we hold this case to be controlled by *Mundy* with the result that the Commonwealth may not include the income from the Electrolyzing operation in its computation of corporate net income tax.

### CONCLUSIONS OF LAW

1. Appellant, in the year 1966, was engaged in two distinct and unrelated businesses: the Keystone Ridgeway Company which engaged in the manufacture and sale of ceramic tile and the Electrolyzing Company which was engaged in plating parts and tools by the electrolyzing process.

2. The electrolyzing business had no relation to the manufacture and sale of ceramic tile and did not contribute to the success of the tile business.

3. The electrolyzing business had no connection with the privilege granted by Pennsylvania to conduct dealings with building materials in this state.

4. Appellant has met its burden of proving that it is entitled to a multiform tax settlement for the year ended December 31, 1966.

5. The Commonwealth may not include appellant's entire taxable income in arriving at a settlement of appellant's corporate net income tax.

Accordingly, we issue the following

## ORDER

AND Now, this 30th day of November, 1972, the appeal of Advance-Wilson Industries, Inc. from the decision of the Board of Finance and Revenue is sustained; unless exceptions be filed to this Order within thirty days hereof, it is directed that judgment be and is hereby entered against Advance-Wilson Industries, Inc. in the amount of $11,850.38 along with interest at the rate of six per cent per annum from the due date of return for the fiscal year ending December 31, 1966.