Commonwealth, Appellant, *v.* Advance-Wilson
Industries, Inc.

Argued May 21, 1973.   Before JONES, C. J., EAGEN,
O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Edward T. Baker,* Deputy Attorney General, for Commonwealth, appellant.

*Bernard Eisen,* with him *Berkman, Ruslander, Pohl, Liber & Engel,* for appellee.

OPINION BY MR. JUSTICE POMEROY, March 25, 1974:

This is an appeal by the Commonwealth from a decision of the court below that application of the Corporate Net Income Tax[1] to appellee, Advance-Wilson Industries, Inc., be on a multiform basis.

Appellee, a Delaware corporation authorized to do business in Pennsylvania, filed its Corporate Net Income Tax Report for the fiscal year ended December 31, 1966 showing tax due in the amount of $11,850.38. The Department of Revenue settled the tax at $24,-400.43, and this determination was approved by the Department of the Auditor General. In arriving at this figure, the Commonwealth used the taxpayer's entire taxable income as reported for Federal income tax purposes, which, of course, included income from its operations conducted outside of Pennsylvania. Appellee filed a petition for resettlement and a subsequent petition for review with the Board of Finance and Revenue. Both of these petitions were refused and an appeal was taken to the Commonwealth Court. That court reversed, and this appeal followed.

From a partial stipulation entered into by the parties and the testimony received in the court below,

---

[1] Corporate Net Income Tax Act, Act of May 16, 1935, P.L. 208, as amended, 72 P.S. §3420a et seq. (now Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, as amended, 72 P.S.§7402 et seq.).

the following facts are established. Advance-Wilson Industries, Inc., the appellee, has its principal office in New York City. It conducts its business through two operating divisions, Keystone Ridgeway Company ["Keystone"] and Electrolyzing Company ["Electrolyzing"]. The Keystone division operates three plants in Pennsylvania which are engaged in the manufacture and sale of ceramic tiles used in building construction. The Certificate of Authority issued by the Commonwealth of Pennsylvania to appellee as a foreign corporation permits appellee "to purchase, lease, produce, manufacture, sell and deal in and with building materials of all kinds". The Electrolyzing division maintains places of business in Illinois and Rhode Island and conducts business throughout the United States. The business of this division is to receive machines or machine parts, equipment and tools which are subject to being abraded and, by an electrolyzing process, plate the worn parts of these items so as to increase their useful life. Between Keystone and Electrolyzing there is no money flow, no transfer of working capital, no sales or purchases nor any accounting transactions. There is no guarantee by either division of indebtedness of the other.

The development of the multiform concept in Pennsylvania and its application to corporate franchise and net income taxation were explored recently by this Court in *Commonwealth v. ACF Industries, Inc.,* 441 Pa. 129, 271 A.2d 273 (1970) and need not be detailed again here. Suffice it to say that to sustain its claim to multiform tax treatment, and thereby exclude a portion of its income from the computation of the Pennsylvania Corporate Net Income Tax, a foreign corporation doing business in this Commonwealth must establish that it "is engaged in a separate business outside of Pennsylvania". *Commonwealth v. ACF Industries, Inc., supra* at 135. On the basis of the facts

recited above, the court below held that appellee had sustained its burden of proving that it is entitled to a multiform tax settlement. We agree and therefore affirm.

The Commonwealth first argues that the businesses conducted by appellee were not independent because certain administrative and other functions were performed for the two divisions by the home office, and profits from each division were remitted to the home office of the corporation. However, the following excerpts from our opinion in *Commonwealth v. ACF Industries, Inc., supra,* dispose of this contention:

"[W]e must focus upon the relationship between the Pennsylvania activity and the outside one, not the common relationships between these and the central corporate structure. Only if the impact of the latter on the operating units or activities is so pervasive as to negate any claim that they function independently from each other do we deny exclusion in this context." 441 Pa. at 142.

"[C]ontributions of unrelated activities to the corporate whole do not vitiate a claim for exclusion, . . . it is the interrelationship between the activities themselves which is the critical factor." 441 Pa. at 139.

"[P]erformance by the corporate whole of policy, administrative, research and similar functions for otherwise independently operating units does not vitiate multiformity any more than does their common but independent contribution of benefits to the corporate whole." 441 Pa. at 142.

"[T]he factors relied upon to characterize the enterprise as unitary are precisely those things which do *not* involve the interrelationship between operating divisions but rather the interrelationship between each division and the corporate superstructure — factors which would likely appear in every case, no matter

how independently each division operated from the other." 441 Pa. at 140.

The Commonwealth next argues that even if the two divisions qualify as separate businesses under the multiform concept, the income of both was taxable because both divisions, Electrolyzing as well as Keystone, conducted business in Pennsylvania. It is true that Electrolyzing *solicited* business in Pennsylvania, as it did throughout the country, by means of advertising circulars mailed from the plant in Illinois to prospective customers. Except for this activity, however, the record discloses no business activity of the division within the Commonwealth.

Were Electrolyzing a separate foreign corporation conducting only the same business that it now conducts as a division, it is undisputed that it could not be taxed by Pennsylvania. The solicitation of business by mail is not a sufficient nexus for the imposition of a corporate net income tax; such a corporation is not "doing business" in Pennsylvania. *Commonwealth v. Eastman Kodak Co.*, 385 Pa. 607, 124 A.2d 100 (1956); *Commonwealth v. United States Tobacco Co.*, 15 Pa. D. & C. 2d 176 (1957); see also 1 CCH, State Tax Rep., Pa., §10-101.55 (1971) (Answers by Pa. tax administrators to questions of Congressional Subcommittee). We see no reason for reaching a different result merely because the business is conducted under the same corporate umbrella as is a separate and unrelated Pennsylvania business.

In *Commonwealth v. ACF Industries, Inc., supra,* after reviewing all the case law on the multiform concept in Pennsylvania, we found "a consistent attempt to allocate to Pennsylvania that fair share of . . . income reflective of activity here and to exclude . . . income *not contributing to the exercise of the Pennsylvania franchise*". (Emphasis added.) The business of

the Electrolyzing division has no connection with the exercise of the privilege granted to appellee by Pennsylvania to conduct the manufacture and sale of building materials in this state, and the limited mail solicitation activities of Electrolyzing in Pennsylvania do not amount to the doing of business. In short, neither that division's tenuous relationship to the Pennsylvania division nor its own restricted activities within the state afford a basis for the imposition of the Pennsylvania Corporate Net Income Tax on that portion of the appellee's income which is derived from its Electrolyzing Company division.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent. In my view, the majority erroneously affirms the order of the Commonwealth Court on the basis both of an erroneous assessment of the record and of a mistaken notion of this Court's decision in *Commonwealth v. ACF Industries, Inc.*, 441 Pa. 129, 271 A.2d 273 (1970).

This Court in *ACF Industries* reviewed in detail the Pennsylvania case law relating to section 2 of the Corporate Net Income Tax Act of 1935,[1] the precise statutory provision at issue instantly. It then expli-

---

[1] Act of May 16, 1935, P.L. 208, § 2, 72 P.S. § 3420b (1964), as amended 72 P.S. §§ 7401-12 (Supp. 1973). Section 2 of the 1935 Act in pertinent part provides: "Where a corporation . . . engages in a separate business outside of Pennsylvania, or owns property having a situs outside of Pennsylvania, which business or property bears no relation to the exercise of the Pennsylvania franchise, the department, with the approval of the Auditor General, may determine the base for the tax imposed by this act for the tax year by excluding from the net income of such corporation as returned to and ascertained by the Federal Government, the net income from the business or property which bears no relation to the exercise of the Pennsylvania franchise."

cated those principles which emerged from our cases as clear.

"First, if a multistate business enterprise is conducted in a way that one, some or all of the business operations outside Pennsylvania are independent of and do not contribute to the business operations within this State, the factors attributable to the outside activity may be excluded.

"Second, in applying the foregoing principle to a particular case, we must focus upon the relationship between the Pennsylvania activity and the outside one, not the common relationships between these and the central corporate structure. Only if the impact of the latter on the operating units or activities is so pervasive as to negate any claim that they function independently from each other do we deny exclusion in this context.

"Third, without attempting to preclude exclusion in any given case, we reiterate our statement above that the manufacturing, wholesaling and retailing (or manufacturing and selling) activities of a single enterprise are not fit subjects for division and partial exclusion. On the other hand, a truly divisionalized business, conducting disparate activities with each division internally integrated with respect to manufacturing and selling, may well be in a position to make a valid claim for exclusion. Id. at 142-43, 271 A.2d at 280.

Here, we need focus on only the first principle from *ACF Industries*. This initial principle contains two separate conditions before "the factors attributable to the outside activity may be excluded." First, "one, some or all of the business operations [must be conducted] outside of Pennsylvania." Second, those business operations must be "independent of and [can] not contribute to the business operations within this State." Cf. *Commonwealth v. Mundy Corp.*, 346 Pa. 482, 30 A.2d 878 (1943); *Commonwealth v. Columbia*

*Gas & Electric Corp.*, 336 Pa. 209, 8 A.2d 404 (1939); *Commonwealth v. Baxter, Kelly & Faust, Inc.*, 53 Dauphin County Rptr. 73 (Pa. C.P. 1942).

"[W]e have specifically held that the taxpayer has the burden of showing that the Commonwealth's computation of its Corporate Net Income Tax is incorrect." *Commonwealth v. National Advertising Co.*, 449 Pa. 59, 63, 295 A.2d 83, 85 (1972); *Commonwealth v. R.S. Noonan, Inc.*, 419 Pa. 411, 417, 213 A.2d 787, 790 (1965); *Deitch Co. v. Board of Property Assessment*, 417 Pa. 213, 221, 209 A.2d 397, 402 (1965). "In determining the amount of property or net income allocable to the state the burden is on the taxpayer to show by clear and cogent evidence that the taxing formula resulted in extraterritorial values being taxed." *Commonwealth v. American Telephone & Telegraph Co.*, 382 Pa. 509, 516 n.2, 115 A.2d 373, 376 n.2 (1955); see *Commonwealth v. Emhart Corp.*, 443 Pa. 397, 403-04, 278 A.2d 916, 918-19, cert. denied, 404 U.S. 981, 92 S. St. 451 (1971); cf. *Butler Brothers v. McColgan*, 315 U.S. 501, 62 S. Ct. 701 (1942).

The taxpayer has not here satisfied its burden of proof with respect to the critical issue whether "one, some or all of the business operations [was conducted] outside Pennsylvania." The Commonwealth Court did not address this issue; that court made no specific finding of fact that the Electrolyzing Division did not do business within this state.[2] Therefore, the taxpayer

---

[2] From the Commonwealth Court's findings of fact, it is apparent that the factual issue whether taxpayer's Electrolyzing Division did business within Pennsylvania was not considered.

"(1) Appellant is a holding company which has two operating divisions, Keystone Ridgeway Company and Electrolyzing Company.

"(2) The Keystone Ridgeway Company division operates three plants in Pennsylvania which are engaged in the manufacture and sale of ceramic tiles used in building construction, bathrooms and any place that might require flooring of a waterproof nature.

has not justified its being afforded multiform treatment.

The majority, however, apparently accepts the bald assertion in the taxpayer's brief that the only activity its Electrolyzing Division conducted in Pennsylvania was the solicitation of business by mailing advertising material. For my part, I prefer to rely on what the record discloses.

"(3) The Certificate of Authority issued by the Commonwealth of Pennsylvania to the appellant as a foreign corporation permits appellant 'to purchase, lease, produce, manufacture, sell and generally deal in and with building materials of all kinds.'

"(4) The Electorlyzing Company division maintains places of business in Illinois and Rhode Island and conducts business throughout the United States. The business of this division is to receive machines or machine parts, equipment and tools which are subject to wear abrasion and, by the electrolyzing process, plate the parts in order to increase their useful longevity.

"(5) The Certificate of Authority issued to appellant as a foreign corporation by the State of Illinois states the purposes for the transaction of business in the state to be: 'To engage in the business of manufacturing, exploiting, producing, assembling, maintaining, processing, cleaning, milling, machining, repairing, improving, procuring, purchasing, disposing, selling and distributing of machines, equipment and tools of every kind and description and other goods, wares and products.'

"(6) There is no money flow, no transfer of working capital, no intradivision sales or purchases or no accounting transactions between Keystone and Electrolyzing.

"(7) There is no combined advertising or promotion program nor is there any common profit sharing or pension plan between Keystone and Electrolyzing.

"(8) No employe of either division performs any function for the other.

"(9) There is no guarantee by either division of the indebtedness of the other.

"(10) There is no interaction of the sales or purchasing departments between divisions."

*Advance-Wilson Indus., Inc. v. Commonwealth,* 7 Pa. Commonwealth Ct. 14, 15-17, 297 A.2d 835, 836-37 (1972).

To support its position that taxpayer's Electrolyzing Division was doing business within Pennsylvania, the Commonwealth refers to the following testimony of the General Manager of that division.

"Q. [Commonwealth's attorney] Were the plants at Providence and Chicago at this time [1966]? A. Yes, sir. Q. And your mail orders were sent throughout the United States? A. Yes. Q. Into Pennsylvania? A. Oh, yes. Q. Generally, who did you process for, what type of— A. Well, people in Pennsylvania— We didn't do a great deal of business in Pennsylvania. Q. Don't restrict it to Pennsylvania. A. Well, people like Boeing, Lockheed, Westinghouse, Pratt and Whitney Aircraft, Vertol Aircraft. Do you want any more, counselor? Q. I really meant what type of articles did you work on? A. Oh, they were—could be missile parts, they could be washing machine parts, gears, shafts, anything that was exposed or subject to excessive wear."

This portion of the record reveals that taxpayer's Electrolyzing Division conducted business in Pennsylvania. The manager's testimony indicates, at the very least, that the Electrolyzing Division processed parts and articles for Pennsylvania customers. Contrary to the majority's statement, the record plainly shows that the taxpayer's Electrolyzing Division did more than simply solicit business in Pennsylvania. Of course, it did solicit business, but that solicitation was merely the prelude to receiving parts and articles to be processed for Pennsylvania customers.

An essential prerequisite of multiform tax treatment under section 2 of the Corporate Net Income Tax Act of 1935 is a showing that the separate business sought to be excluded from Pennsylvania's taxing jurisdiction bears no relation to Pennsylvania. It is incumbent upon the taxpayer to establish this fact.

Here, the taxpayer has failed to meet its burden of proof. In my view, the order of the Commonwealth Court should be reversed.

Mr. Justice NIX joins in this dissenting opinion.