Commonwealth, Appellant, *v.* Kirby Estates, Inc.

104

Argued May 21, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edward T. Baker,* Deputy Attorney General, with him *William C. Sennett,* Attorney General, for Commonwealth, appellant.

*John McI. Smith,* with him *Nauman, Smith, Shissler & Hall,* for appellee.

OPINION BY MR. JUSTICE COHEN, October 3, 1968:

This is an appeal by the Commonwealth involving the franchise tax imposed upon Kirby Estates, Inc. for the year 1962.

Kirby Estates, Inc. (taxpayer) is a Delaware corporation organized in 1943 as an investment and holding company. Until 1961 taxpayer engaged solely in the business of investing in stocks and securities, its activities in this respect being carried on wholly outside Pennsylvania. These activities continued in a similar fashion during 1962.

However, during December, 1961, taxpayer, by action of its board of directors acquired a tract of real estate in Erie, Pennsylvania, for the sum of $77,565.57. It paid for this real estate by giving cash in the amount of $32,565.57 and securing a mortgage from an Erie bank for $45,000. All of the cash was drawn from its earnings; none came from the sale of any stocks or securities. At the same time taxpayer registered to do business in Pennsylvania.

Taxpayer's Pennsylvania real estate was rented to unrelated tenants. It was managed for taxpayer by an Erie firm which received a monthly management fee. In 1962 taxpayer received rental income from the property of $10,692.60 and incurred expenses in connection therewith of $10,045.78, leaving a net income of $646.82.

In computing its 1962 franchise tax, taxpayer valued its capital stock at $30,450.36 by taking the December 31, 1962, depreciated book value of its Penn-

sylvania real estate and subtracting therefrom the December 31, 1962, mortgage balance. To this figure it applied a taxable proportion of 100% (all of the factors attributable to its real estate activity were in Pennsylvania) and applied the five mill tax rate to obtain a tax of $152.25.

The Commonwealth, however, refused to let taxpayer eliminate its securities activity in this fashion. It settled the tax by including both the real estate and securities in determining the value of taxpayer's capital stock. This produced a value of $1,400,000. Application of the allocation fractions (100% for tangible property, no compensation fraction at all, and slightly less than 13% of all receipts) produced a taxable proportion of .564963, a taxable value of $790,948 and a tax of $3,954.74.

Taxpayer, feeling somewhat aggrieved that its $77,565.57 investment in Pennsylvania had produced net income of $646.82 and a Pennsylvania franchise tax of $3,954.74, appealed. Holding that the inclusion of taxpayer's securities in computing the value of its capital stock for franchise tax purposes produces an unreasonable result, one out of proportion to the business conducted in Pennsylvania and hence, unconstitutional, the lower court sustained taxpayer's objections and determined the correct tax to be $152.25 as reported. The Commonwealth then appealed.

At the time we initially sustained the Act of May 16, 1935, P. L. 184, adding the franchise tax provisions to the Act of June 1, 1889, P. L. 420, as amended, 72 P.S. §1871, we indicated that the tax was one upon the privilege of doing business in Pennsylvania and that to be validly imposed it must be applied only to that part of the business conducted in this Commonwealth. *Commonwealth v. Columbia Gas & Electric Corporation*, 336 Pa. 209, 8 A. 2d 404 (1939). In

*Columbia* we commented: "... since the tax is nothing but one upon the value of a privilege and the taxable measure is fundamentally the capital stock used in connection with that privilege, we must for the purpose of determining the validity of the tax separate from it that capital stock value which bears no relation to the privilege." 336 Pa. 209, 225-226, 8 A. 2d 404, 413. Thus we required in *Columbia* separation of the company's outside holding company business from its Pennsylvania operating business and sustained the tax only upon the latter.

Subsequently, in *Commonwealth v. Mundy Corporation*, 346 Pa. 482, 30 A. 2d 878 (1943), we directed computation of the franchise tax by excluding the value of securities owned and held by the company in Pennsylvania during the year from the value of its capital stock, and by including only the value of Pennsylvania real estate owned by it and rented to others. We noted that the company's business was real estate, and that the holding of the securities did not constitute the doing of any business here. See also, *Commonwealth v. Baxter, Kelly & Faust, Inc.*, 53 Dauph. 73 (1942), for another application of this concept of unrelated assets.

The Commonwealth argues here that taxpayer was engaged throughout 1962 in a single business—investing—and that its outside securities investment activity and its Pennsylvania real estate activity are part and parcel of a single enterprise. This may be assumed for our purposes, but we believe it misses the mark. What the Commonwealth has done is to find the broadest umbrella it can locate to cover all of taxpayer's activities and then has enveloped the latter in a general conclusion. The same argument could be made in connection with a hypothetical corporation manufacturing space rockets in Pennsylvania and women's

clothes in Idaho in a way totally unconnected with each other.[1] True, the corporation is conducting one activity—manufacturing—but this designation does not begin to meet the issue.

The question now as it has always been, is what is the value of the corporate franchise being exercised in Pennsylvania, and has there been eliminated therefrom all elements of value bearing no relation to the exercise of the privilege of doing business here? Whether we speak of multiform business activity or unrelated assets, this question remains the same. Here, it is obvious that taxpayer's presence in Pennsylvania was limited to its ownership of real estate and that its activity in connection therewith was neither enhanced nor diminished by its securities activity outside Pennsylvania. The two were unconnected in the traditional sense even though they may be broadly joined and categorized by the descriptive verb "investing." For this reason we sustain taxpayer's position.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The majority has mischaracterized the business of taxpayer and has misapprehended the nature and purpose of the franchise tax at issue. This is not a case like *Commonwealth v. Columbia Gas & Electric Corporation*, 336 Pa. 209, 8 A. 2d 404 (1939), where the taxpayer operated an active manufacturing business within Pennsylvania, while performing a holding company business outside of the state. Nor is this case like *Commonwealth v. Mundy Corporation*, 346 Pa.

---

[1] By "unconnected" we mean in the sense that each operates independently and neither contributes directly to the operation of the other, not in the sense that the corporation as a whole does not benefit. For this reason, for example, we attach no importance to the fact that taxpayer maintains a single bank account rather than one for each activity.

482, 30 A. 2d 878 (1943), which involved a company that had an investment operation outside of the state while doing a *general* real estate business within. Taxpayer Kirby Estates is an investment company pure and simple; its purchase of Pennsylvania real estate was nothing more than an additional investment similar to its security holdings.

It is clear that a stockholder does not take an active part in the operation of the corporation in which he invests. He holds the stock and waits for income (i.e., dividends) and/or capital appreciation. This of course is the posture of taxpayer as to its out of state security holdings. Its real estate purchase created no change in taxpayer's business operation. It purchased the property, then left its management to an agent. There is no indication that taxpayer had anything more to do with its real estate holding than purchasing the property and finding an agent to operate it, just as it has nothing more to do with a corporation in which it holds stock once it has bought the securities. It then awaited a return on its investment, just as it awaits a return on its security holdings.

Viewed in this light, it becomes apparent that the income produced in any given year by the real estate is not necessarily a guide to how lucrative an investment the property has become. A steady increase in capital appreciation, most likely through an increase in land value, will evidence a wise investment by taxpayer, regardless of the income produced. Similarly, taxpayer in its securities investments has no doubt bought the stock of some corporations because of its dividend record, and the stock of other corporations because of its capital growth potential.

Regardless, a franchise tax is not based on the income produced by the business. It is a tax on the privilege to do business in Pennsylvania. It is per-

haps unfortunate that taxpayer's Pennsylvania investment did not produce much income in the year in question, although it is possible that income production was in no way taxpayer's motive in making the investment. Next year, taxpayer may do better. The franchise tax is not tied to the success of taxpayer's Pennsylvania investment. Taxpayer does an investment business, and its Pennsylvania investment is an integral part of this. When it brought its investment business into Pennsylvania, it became liable for a franchise tax based on the entire business.

The majority's attempt to justify its result by analogizing this case to one where a hypothetical corporation manufactures space rockets in Pennsylvania and clothing in Idaho misses the mark by enough to embarrass even the most errant of those space projectiles. Taxpayer is not doing two separate and distinct businesses. It is similar to a corporation that manufactures the nose of the rocket in one state and the tail in another. It does not matter that taxpayer is investing in different types of things, any more than it would be relevant if it held only oil company stock in one state and only communications stock in another. "Manufacturing" is a generic category that can cover variant operations. Investing however requires doing essentially the same task in all events—purchasing property, be it land, securities, or even warehouse certificates for Scotch whiskey, waiting for it to produce income or appreciate in value, and deciding whether to hold or sell. This is the one and only business that taxpayer did and the statute dictates that it should pay its franchise tax based on all of this business.

I dissent.

Mr. Justice MUSMANNO joins in this dissent.