## Commonwealth v. Taft Broadcasting Company

*William P. Streng* of *Taft, Stettinius & Hollister,* for appellant.

*M. David Smeltz,* for Commonwealth.

LIPSITT, J., November, 26, 1969.—This is an appeal by Taft Broadcasting Company (hereinafter referred to as "Taft") from a tax settlement order of the Board of Finance and Revenue of the Commonwealth of Pennsylvania dated March 27, 1968. Taft is a Delaware corporation with its principal and home office at Cincinnati, Ohio, and is qualified to do business in the Commonwealth of Pennsylvania. It owns a television broadcasting station at Scranton/Wilkes-Barre, Pa. (WNEP-TV) and also owns 16 other broadcasting stations outside of Pennsylvania. In its corporate net income tax report filed for the year ending March 31, 1967, the company filed its report showing a self-assessed tax of $18,670.17. The Department of Revenue settled the tax at $58,254.59 and then the Board of Finance and Revenue on a petition for review resettled the tax at $47,553.42. Thereafter, Taft appealed to this court and by an agreement in writing pursuant to the Act of April 22, 1874, P. L. 109, 12 PS §688, the case was tried without a jury and the parties stipulated the facts. A hearing was held before the court but no testimony was presented which is deemed necessary in a determination of this case. Such of the stipulated facts shall be referred to hereafter which are pertinent for an understanding of this opinion.

Taft claims the business which it is doing in Penn-

sylvania, limited as it is to one television station, should permit it to separate its accounting computations from its transactions in other states thus enabling it to be taxed on a multiform basis. The Commonwealth, on the contrary, contends that Taft is engaged in a unitary operation, because its business inside and outside of Pennsylvania is inextricably correlated.

The questions presented are as follows:

1. Are Taft's operations multiform, thereby permitting it to utilize separate accounting in determining its corporate net income tax liability?

2. Is the corporate net income tax statute in its application to Taft violative of the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution on the ground that a disproportionate amount of Taft's income has been allocated to Pennsylvania on the unitary basis?

3. Is the tax liability, which in this case would have been $18,670.17 if the operation of WNEP-TV were transferred to a subsidiary corporation, an arbitrary discrimination violative of the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution?

The statute involved is the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, 72 PS §3420, as reenacted and amended (hereinafter referred to as the "CNI Tax Act"). Under the statute, tax is imposed upon the "net income" of corporations for the privilege of doing business in Pennsylvania. "Net income" is defined in paragraph 1(b) of section 2 of the act, in part, as follows: ". . . taxable income . . . as returned to and ascertained by the Federal Government. . . ." Because a literal application of the statute might cause an improper result, various legal decisions referred to hereafter have acknowledged a corporation may be engaged in a multiform business, only a part

of which is performed in Pennsylvania. But whether any corporation can segregate its activities within the State and thus be regarded as multiform in operation as opposed to unitary depends upon an examination of the facts.

Taft states that each of its broadcasting stations is separately licensed and restricted as to the geographical areas of its effective radiating power and that the various stations are not directly related to each other but are conducted as separate and independent units. It points out that the broadcasting market areas of each of the other stations are in metropolitan areas outside of Pennsylvania. Further, that the corporation derives benefits from each independent unit which is not related to the operation of the other units. Consequently, it claims that WNEP-TV broadcasting operations are entitled to separate accounting treatment, because the operations of the corporation are multiform, i.e., completely separable from the activities of Taft's other broadcasting stations. It relies upon several Pennsylvania Supreme Court and Dauphin County cases which recognize that multiformity in business activity exists where two separate and segregated enterprises are unrelated to each other and are conducted as independent units.

In Commonwealth v. The L. D. Caulk Co., 11 D&C 2d 218, 69 Dauph. 289 (1956), this court, speaking through the late President Judge William H. Neely, reviews the authorities and sets forth the principles relating to the differentiation between unitary and multiform businesses. The rules of law need not be commented upon at any length. It has been pointed out in such opinions as Commonwealth v. Columbia Gas and Electric Corporation, 336 Pa. 209 (1939), which involved the computation of the franchise tax imposed upon a foreign corporation that (at page 224) ". . . only such tangibles and in-

tangibles should be taken into account as are concerned with the functions exercised within the state."

The real poser in each controversy of this nature is in arriving at a proper value of something within a State which is a segment of a larger business enterprise operating within and without the State. The Commonwealth argues, and it appears with good reason, that there is no decision adverse to the Commonwealth on the unitary issue where a corporation was doing the same business inside and outside of Pennsylvania.

In Commonwealth v. Minnesota Mining and Manufacturing Co., 23 D. & C. 2d 337, 340, 73 Dauph. 223 (1959), affirmed per curiam 402 Pa. 612 (1961), the court stated:

"It has been generally held that in order to establish a multiform business it must appear that there were separate and distinct activities and that those having no reference to the privilege granted to do business in Pennsylvania should be excluded from the tax base. However, if the out-of-state activities are part of the organic whole, and have an important functional part in the business conducted here, proceeds therefrom may be included."

Scrutinizing the facts in the case at hand in light of the decisional law, the unitary nature of the business is readily depicted. The money used to purchase the broadcasting station as well as six other stations on April 1, 1964, was borrowed from various insurance companies and banks. Payment of this loan was made by the principal office in Cincinnati, Ohio. Thus, the general credit of the corporation stands against the note used to purchase WNEP-TV. The Cleveland sales office serves as a source of revenue for each station. To expedite the flow of funds, National Broadcasting Company and American Broadcasting Company revenue is paid directly to a New York City

lockbox which is controlled by the Cincinnati headquarters. Any excess of the maximum stipulated bank balance is transferred to the headquarters. General casualty insurance is purchased for all stations and is charged to each station by the home office. WNEP-TV employes are covered by the Taft Profit Sharing Retirement Plan. Broadcasting equipment has been and is transferred from one station to another, and the principal office instructs the local station how to adjust its books to reflect such a transfer. This analysis surely indicates that the assets within Pennsylvania are correlated in use with assets outside of Pennsylvania. There is an obvious relationship of all the stations through the Cincinnati headquarters. Each station is part of the organic whole. Each station has drawn upon the credit of the corporation in order to begin its operations, and each contributes to the growth and profits of the corporation in return.

The Commonwealth relies, in part, upon Commonwealth v. Frank G. Shattuck Co., 46 D. & C. 199, 52 Dauph. 190 (1941). The latter case as in the instant case involved the CNI Tax Act. In Shattuck, the taxpayer was engaged in the operation of a chain of restaurants, of which one restaurant was operated in Pennsylvania. The taxpayer sought to escape liability for the CNI tax by proving that the Pennsylvania restaurant was operated at a loss for the year in question. The court found that since the operations outside of Pennsylvania were of the same nature as those in Pennsylvania, the taxpayer was engaged in a unitary business. The court pointed out the common advertising of the entire chain, the common purchases, the supervision by the home office and the fact that each unit in the chain performed the same functions.

In Commonwealth v. United Biscuit Company,

56 Dauph. 162 (1944), the taxpayer operated 16 separate divisions, each of which maintained separate records and books, and separate bank accounts into which were deposited receipts from its own sales and from which was disbursed all material and expense items, as well as payrolls. The court held that the company was doing a unitary business, that the income derived from the carton division, a division operated entirely outside of Pennsylvania, is included in the income, that the net income from all of the divisions may be considered, and that the Commonwealth was within its rights in denying the taxpayer's contention that only the income from the three divisions which actually transact business in Pennsylvania was subject to tax.

It appears inescapable that the many local operations of Taft actually contribute to the success of the whole business enterprise through research, production or marketing. Where such connecting links have been found to exist, it has been consistently held that the taxpayer must report on a unitary basis.

It may finally be pointed out that the case of Commonwealth v. The L. D. Caulk Co., supra, which Taft cites in defining the requisites of multiformity, was a case which held that all of the corporation's activities carried on in Pennsylvania tended to increase and promote its entire business enterprise and that the corporation was, therefore, a unitary business.

Attention is now directed to the question whether the CNI Tax Act in its application to Taft is violative of the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution. Taft urges that the Pennsylvania taxing formula so unreasonably apportions income to Pennsylvania which has no relation to the Taft operations in Pennsylvania that the Commonwealth taxes extraterritorial values. The argument is not novel. It must be

recognized that the CNI tax is not a tax on the privilege of conducting an isolated activity in Pennsylvania, but upon the privilege of extending the total corporate activity into this Commonwealth. Therefore, the tax may be based upon an allocated portion of the income of the total business rather than upon the separate income of the unit situated in the Commonwealth.

It is helpful, in dealing with the issue of constitutionality, to refer to the conclusions reached by the court in Commonwealth v. Minnesota Mining and Mfg. Co., supra. The court stated, 23 D. & C. 2d at page 341:

"At the outset, it must be borne in mind that the tax here in question is not a property tax but a tax on the privilege of doing business in Pennsylvania, measured by the statutory formula. In effect, the defendant claims that this formula assigns income to Pennsylvania which should be excluded by reason of multiformity; hence, brings about an unconstitutionality in the application thereof.

"It has long since been held that viewing the act as a whole it cannot be declared to violate either the Federal or State constitutions, or to be so inherently arbitrary as to render it unconstitutional: Com. v. Columbia Gas & Electric Corporation, 336 Pa. 209, 223."

Taft feels that the tax result here is so arbitrary as to fit squarely within the mandates of the United States Supreme Court decision in Hans Rees' Sons, Inc. v. North Carolina, 283 U. S. 123 (1931), where it was determined that the allocation method, as applied to taxpayer's business, operated unreasonably and arbitrarily in attributing to North Carolina a percentage of income wholly unrealistic to the business transacted by the taxpayer in that State, thus holding the formula unconstitutional in its application to that taxpayer. The evidence demonstrated that income

was allocated to North Carolina for taxing purposes in an amount four times over the North Carolina income.

In Hans Rees' Sons, Inc. v. North Carolina, supra, the difficulty of making an exact apportionment is acknowledged, and it was said, at pages 133-134:

". . . when the State has adopted a method not intrinsically arbitrary, it will be sustained until proof is offered of an unreasonable and arbitrary application in particular cases . . . evidence may always be received which tends to show that a State has applied a method, which albeit fair on its face, operates so as to reach profits which are in no just sense attributable to transactions within its jurisdiction."

The court in Commonwealth v. Frank G. Shattuck Company, supra, considered the Hans Rees case and dismissed the argument. It was stated, 46 D. & C., at page 210:

"We point out, however, that 'the entire income' in the instant case is not attempted to be taxed.

"The formula under the statute in question makes: (a) The tangible property in the State the numerator and all the corporation's tangible property the denominator; (b) the wages, salaries, and commissions in this State the numerator, the total wages, salaries, and commissions the denominator; and (c) the gross receipts in this State the numerator and the total gross receipts the denominator. In each case one third of the net income is the multiplicand. Does such a formula, under the language of the Hans Rees' case above quoted, 'reach profits which are in no just sense attributable to transactions' within the State? We think not. If the Hans Rees' case be pressed to the limit for which defendant contends, then any corporation which may have tremendous operations within the State, under the protection of our laws, if there

happened to be no net income from those operations, would not have to pay one cent of the excise tax under this statute."

Taft also relies upon an opinion of this court in Commonwealth v. Kirby Estates, Inc., 88 Dauph. 182 (1967), wherein the Dauphin County court observed that even though a company was conducting a unitary business, there might be property located in another State which could not properly be included in such a tax base. The Pennsylvania Supreme Court has affirmed the Kirby Estates decision, 432 Pa. 103 (1968), but therein it was said the taxpayer was engaged in two separate and distinct business enterprises, and thus it was permissible for Kirby to file its franchise tax on a multiform basis.

Where language is employed as in the Hans Rees' case setting forth a general proposition of unfair taxation resulting in a misapportionment, it can be expected that most taxpayers, particularly where a tax is based on a formula which derives from many sources, feel an improper allocation has been assigned to them. The Hans Rees' decision may very well be correct where an attempt is made to reach profits which in no just sense can be attributable to transactions within its jurisdiction. But for this corporation to prove that this occurred here, it must meet a burden which it cannot be said to have done in this case.

The final proposition is that the tax here would not have been increased if WNEP-TV had merely been transferred to a subsidiary corporation. Thus, it is said the constitutional right to equal protection of the laws has been violated. It is noted that the tax liability is at an amount almost three times what it would be if WNEP-TV were separately incorporated. Undoubtedly the problem as presented here may have been avoided by transferring WNEP-TV to a subsidiary.

However, the fact remains that no subsidiary corporation was formed. The situation can only be dealt with as it exists and conditions which possibly could have been created cannot be assumed. Taft must believe that it is to their advantage to retain all of its operations within one complete entity. It is conceivable that a separate subsidiary would entail other corporate charges which could have been exacted by the Commonwealth.

In accordance with this opinion, we draw the following

## CONCLUSIONS OF LAW

1. The Taft Broadcasting Company is engaged in a unitary business, and its Scranton/Wilkes-Barre TV Station, WNEP-TV, is a unit of such business.

2. Taft Broadcasting Company has not met its burden of proof to demonstrate that the amount of income allocated to Pennsylvania on the unitary basis results in an unconstitutional tax.

3. The fact that Taft Broadcasting Company could have avoided greater tax liability by transferring its WNEP-TV operations to a subsidiary corporation is immaterial to the decision of this case.

4. Taft Broadcasting Company is a unitary business corporation engaged in the broadcasting business and, as such, the Pennsylvania Corporate Net Income Tax Act must be applied to all its business activities as required by the statute.

Accordingly, we enter the following

## DECREE NISI

And now, November 26, 1969, the appeal of Taft Broadcasting Company is dismissed and the resettlement made by the Board of Finance and Revenue imposing tax in the amount of $47,553.42 is sustained.

Judgment is hereby directed to be entered in favor of the Commonwealth in the amount of $47,553.42, less any amount paid, together with statutory interest on the unpaid balance, unless exceptions be filed hereto within 30 days.

The prothonotary is directed to notify the parties or their counsel of this decree forthwith.