## Commonwealth *v.* Carheart Corporation, Appellant.

Argued November 13, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused February 13, 1973.

*William P. Thorn,* with him *Wolf, Block, Schorr and Solis-Cohen,* for appellant.

*George W. Keitel,* Deputy Attorney General, with him *J. Shane Creamer,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, January 19, 1973:

This is an appeal from a judgment of the Commonwealth Court dismissing appellant's petition for resettlement of franchise tax for the year 1958.[1] The Commonwealth Court sustained the action of the Board of Finance and Revenue [Board] which approved the tax settlement as fixed by the Department of Revenue and Auditor General.

Appellant, a Delaware corporation, holds a Certificate of Authority ". . . to transact in the Commonwealth of Pennsylvania the business of to buy, sell and generally deal in and with real estate and to acquire, pur-

---

[1] *Carheart Corp. v. Commonwealth,* 5 Pa. Commonwealth Ct. 195 (1972).

chase, own, hold, sell, assign, transfer, mortgage, pledge or otherwise dispose of and deal in stocks, bonds, mortgages, securities, notes and commercial papers." In 1958 —the tax year in question—appellant owned 27,500 shares of the stock of Meadville Corporation [Meadville] which it excluded from the value of its capital stock in computing its franchise tax. The Commonwealth, disallowed that exclusion and included the value of the Meadville stock in the tax base.

The franchise tax is imposed by the Act of June 1, 1889, P. L. 420, §21, as amended, 72 P.S. §1871(b) (1949), which provides: "(b) Every foreign corporation, joint-stock association, limited partnership, and company whatsoever, from which a report is required under the twentieth section hereof, shall be subject to and pay into the treasury of the Commonwealth annually, through the Department of Revenue, a franchise tax at the rate of five mills upon a taxable value to be determined in the following manner. The actual value of its whole capital stock of all kinds, including common, special, and preferred, shall be ascertained in the manner prescribed in the twentieth section of this act, and shall then be divided into three equal parts." The "three equal parts", mentioned in the statute, refer to three fractions involving the taxpayer's tangible property, wages, and gross receipts.[2] *Commonwealth v. Rieck Inv. Corp.*, 419 Pa. 52, 56, 213 A. 2d 277, 280 (1965). "All three fractions are designed as measures of corporate activity in the taxing state." *Commonwealth v. Koppers Co., Inc.*, 397 Pa. 523, 531, 156 A. 2d 328, 333 (1959). Accord, *Commonwealth v. Columbia Gas and Elec. Corp.*, 336 Pa. 209, 8 A. 2d 404 (1939).

---

[2] Intangibles are included in the "gross receipts" fraction of the formula. *Commonwealth v. Columbia Gas and Electric Corp.*, 336 Pa. 209, 219, 8 A. 2d 404, 411 (1939).

The issue presented, as the Commonwealth Court observed, "is whether the Meadville stock bears sufficient relation to Carheart's business activities in Pennsylvania, so as to require the inclusion of the value of the Meadville stock in the formula as a Pennsylvania related valuation under which Carheart would have its franchise tax computed for the taxable year of 1958." *Carheart Corp. v. Commonwealth*, 5 Pa. Commonwealth Ct. 195, 210 (1972).

The Commonwealth Court reviewed the relevant authorities and properly concluded, *"if the Meadville stock was an integral part of the ongoing business of Carheart in Pennsylvania,* then the value of the Meadville stock must be included in the Pennsylvania capital stock value basis from which the franchise tax liability is computed." Id. at 213-14. (Emphasis added.) See also *Commonwealth v. The Mundy Corp.*, 346 Pa. 482, 30 A. 2d 878 (1943); *Commonwealth v. Columbia Gas and Elec. Corp.*, supra. However, in applying this test to the findings of fact, as stipulated by the parties, the court erroneously held that the stock was an "integral part" of appellant's business.

The Commonwealth's own admission and agreed statement of facts precludes a determination on this stipulated record that the stock was an integral part of appellant's business. The stipulation of facts, establishing the factual record and binding upon our courts, specifically state: "72. The Meadville stock owned by Carheart and the other securities described above previously owned by Carheart are *unrelated to the real estate investments of Carheart and the real estate business carried on by Carheart.* The real estate activities of Carheart would have been carried on substantially unchanged if it had never owned any of these securities." *Carheart Corp. v. Commonwealth*, supra at 209. (Emphasis added.) Thus, the Commonwealth itself,

explicitly agreed that the Meadville stock was "unrelated to the real estate investments of Carheart and the real estate business carried on by Carheart."[3] That evidentiary record binds the Commonwealth—as it does the taxpayer—and is determinative of this tax controversy.

In *Commonwealth v. The Mundy Corp.,* supra, this Court held: "The Act of 1935, P. L. 184, amending the Act of 1889, P. L. 420, does not give power to the Commonwealth to levy a capital stock tax or a franchise tax upon securities held and owned by a foreign corporation doing business in Pennsylvania, which have no fair relation to the value of the franchise enjoyed by the corporation in this state. Such assets must be excluded." Id. at 484, 30 A. 2d at 879-80. Similarly, here, the Commonwealth, proceeding on a record which conclusively establishes that the stock is "unrelated" to appellant's business, may not levy a franchise tax based on the value of the Meadville securities.

Judgment vacated and matter remanded to the Commonwealth Court for the entry of an appropriate judgment consistent with this opinion.

Mr. Justice EAGEN dissents and would affirm on the opinion of the Commonwealth Court.

---

[3] The Commonwealth's reliance on *Commonwealth v. Eaglis Corp.,* 354 Pa. 493, 47 A. 2d 661 (1946), is misplaced. There, the Court found that the intangibles were held in furtherance of the corporation's business. Here, the Commonwealth concedes that the securities were "unrelated" to appellant's real estate business and investments.