Commonwealth, Appellant, *v.* Morewood Realty Corp.

Argued May 22, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Edward T. Baker,* Deputy Attorney General, for Commonwealth, appellant.

*William Y. Rodewald,* with him *Buchanan, Ingersoll, Rodewald, Kyle & Buerger,* for appellee.

OPINION BY MR. JUSTICE NIX, October 29, 1974:

This is an appeal by the Commonwealth from an adverse decision of the Commonwealth Court holding that New York property owned by appellee, Morewood Realty Corporation, should be excluded from the valuation of Morewood's capital stock for purposes of the Pennsylvania franchise tax, Act of June 1, 1889, P. L. 420, §21, as amended, 72 P.S. §1871(b), imposed upon Morewood for the year 1966. *Morewood Realty Corp. v. Commonwealth,* 6 Pa. Commonwealth Ct. 244, 294 A.2d 219 (1972).

The parties stipulated to the following facts. Morewood is a Delaware Corporation whose principal place of business is in New York. It is registered to do business in Pennsylvania. It owns two buildings in Pittsburgh and each is rented to unrelated tenants and managed by a local rental agent. The Corporation also owns a sand and gravel business in New York from which it receives royalties and rental income from the rental of machinery used thereon. In addition, the company owns and manages a portfolio of securities in New York. Director's meetings are held at the New York office where the President makes routine decisions. All the Corporation's properties except the two Pittsburgh buildings are located in New York. Morewood has never had any employees working in Pennsylvania. One director and vice president resides in Pennsylvania but he also serves on boards of other companies. This officer travels to New York once a month to vote at meetings and does not supervise the Pennsylvania properties. Morewood carries separate insurance

policies on its Pittsburgh property. The net income from the Pittsburgh properties in 1966 amounted to $1,-657. The buildings were purchased in 1965 in a cash transaction and none of the out-of-state assets were used either to secure the Pennsylvania purchase money or to act as reserve for costs on any Pittsburgh property.

When Morewood first submitted its tax return for 1966 it included its New York assets and receipts. Using the formula in the Franchise Tax Act and a value of $24,155,130 for its capital stock its franchise tax equalled $4,563.63. The Department of Revenue increased the valuation of the capital stock to $35,000,000. Morewood petitioned for resettlement alleging that it had erroneously included the New York assets and receipts and that the revaluation by the Department was incorrect. The Department refused the petition and the Board of Finance and Review sustained the Department's position. Morewood appealed to the Court of Common Pleas which transferred the matter to the Commonwealth Court. The Commonwealth Court reversed the decision of the Board and found that the tax due for the year 1966 should be confined to the value of the land and buildings situated in Pennsylvania which that court determined to be the stipulated book value of those properties.

Appellant here alleges that the Commonwealth Court erred first in excluding the New York assets and receipts because Morewood had not met its burden of proof that inclusion would create an unconstitutional application of the tax; and second that the valuation based on the book value of the properties was incorrect.

In view of the constitutional proscription against taxation by one state of property in another, *Wheeling Steel Corp. v. Fox,* 298 U.S. 193, 209 (1936), our Court has held that the relevant tax statute "does not give power to the Commonwealth to levy a capital stock tax

or a franchise tax upon securities held and owned by a foreign corporation doing business in Pennsylvania which have no fair relation to the value of the franchise enjoyed by the corporation in this state. Such assets must be excluded." *Commonwealth v. Carheart Corp.*, 450 Pa. 192, 196, 299 A.2d 628, 630 (1973), citing *Commonwealth v. The Mundy Corp.*, 346 Pa. 482, 484, 30 A.2d 878, 879-80 (1943). Since Morewood has the burden of proving a constitutionally impermissible application of the tax, *Commonwealth v. American Telephone & Telegraph Co.*, 382 Pa. 509, 516 n.2, 115 A.2d 373, 376 n.2 (1955), the central issue is whether Morewood has shown that its New York properties "have no fair relation to the value of the franchise enjoyed by the corporation" in Pennsylvania.

In *Commonwealth v. ACF Industries, Inc.*, 441 Pa. 129, 271 A.2d 273 (1970) this Court extensively discussed the principles relating to a determination of both the franchise tax and corporate net income tax. There the Court said:

"Exclusion of value or income is claimed because the taxpayer either (1) is engaged in a separate business outside of Pennsylvania (the so-called 'multiform' concept) or (2) owns an asset or assets unrelated to the exercise of its franchise or the conduct of its activities in Pennsylvania (the so-called 'unrelated asset' concept)." 441 Pa. at 135, 271 A.2d at 276.

. . .

"In two franchise tax cases . . . we dealt with taxpayers whose activities were not multiform . . . Neither case involved a situation 'in which a corporation conducts diverse forms of business having no unity save unity of ownership, and no common relation save by separate contributions to the total revenue of the corporation.'" 441 Pa. at 138, 271 A.2d at 277-78.

. . .

Since we deal in these multiform or unrelated asset cases with an apportionment dependent on factual considerations, each case, naturally, is unique. Nevertheless, the principles are clear.

"First, if a multistate business enterprise is conducted in a way that one, some or all of the business operations outside Pennsylvania are independent of and do not contribute to the business operations within this State, the factors attributable to the outside activity may be excluded.

"Second, in applying the foregoing principle to a particular case, we must focus upon the relationship between the Pennsylvania activity and the outside one, not the common relationships between these and the central corporate structure. Only if the impact of the latter on the operating units or activities is so pervasive as to negate any claim that they function independently from each other do we deny exclusion in this context." 441 Pa. at 142, 271 A.2d at 279-80.

In our judgment the facts here show that the only connection between the Pennsylvania properties and the out-of-state enterprises is common ownership. Thus we are satisfied that Morewood has amply met its burden in establishing that it is a multiform business whose New York assets are unrelated to and completely independent of its franchise in Pennsylvania. See *Commonwealth v. Advance-Wilson Industries, Inc.,* 456 Pa. 200, 317 A.2d 642 (1974).

"The question now as it has always been, is what is the value of the corporate franchise being exercised in Pennsylvania, and has there been eliminated therefrom all elements of value bearing no relation to the exercise of the privilege of doing business here? Whether we speak of multiform business activity or unrelated assets, this question remains the same. Here, it is obvious that taxpayer's presence in Pennsylvania was limited to its ownership of real estate and that its activity in

connection therewith was neither enhanced nor diminished by its securities activity outside Pennsylvania. The two were unconnected in the traditional sense even though they may be broadly joined and categorized by the descriptive verb 'investing.' For this reason we sustain taxpayer's position." *Commonwealth v. Kirby Estates, Inc.*, 432 Pa. 103, 108, 246 A.2d 120, 122 (1968).

The Commonwealth in attempting to show that Morewood is a unitary business relies heavily on the fact that a vice president of Morewood resides in Pittsburgh and that he conducts his activity for Morewood in Pennsylvania. However the facts stipulated to by the Commonwealth indicate otherwise and the Commonwealth is bound thereby. See *Commonwealth v. Carheart Corp., supra.*

Finally the Commonwealth relies upon *Commonwealth v. Emart Corp.*, 443 Pa. 397, 278 A.2d 916 (1971) to support its claim that their settlement of the franchise tax was proper. In *Emhart* we held that the sale of certain stock was related to the corporate enterprise and therefore was to be included in income allocable to Pennsylvania for purposes of computing the Pennsylvania Corporate Net Income Tax. That case is distinguishable in that (1) the business was admittedly unitary and (2) it was not an unrelated asset because the sale of the stock was used to reduce a corporate debt as specifically required by a prior loan agreement. Thus the sale benefited the Pennsylvania activity as well as the corporate activity outside of Pennsylvania.

In sum we conclude that the capital stock value for 1966 should include only the value of Morewood's Pennsylvania property. Accord, *Commonwealth v. Kirby Estates, Inc., supra.*

In its second and final argument the Commonwealth argues that the Commonwealth Court erred in using the book value of the Pennsylvania property to compute

the franchise tax. They contend that "other values such as local assessed value for tax purposes, replacement value, insurance on the property, income generated by the property, and appraised value should be considered." In view of the fact that the purpose of the franchise tax is the privilege of doing business in the state and not a property tax, see *Commonwealth v. Columbia Gas and Electric Corp.*, 336 Pa. 209, 8 A.2d 404 (1939), we might be inclined to agree with the Commonwealth's position that book value alone may be an insufficient measure for determining capital stock. Where, as here, however, the Commonwealth made no attempt to offer specific evidence of these "other values", the book value absent such other evidence is an appropriate measure of the value of the franchise. The Commonwealth, having stipulated to the book value, is bound thereby and we cannot conclude on the basis of this record that the Commonwealth Court erred in its valuation. *Commonwealth v. Carheart, supra; Commonwealth v. Kirby Estates, Inc., supra.*

Accordingly, the order of the court below is affirmed.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The majority today affords appellee a "constitutional" immunity from taxation to which it is not entitled. In applying the doctrines developed in our earlier cases without undertaking fresh constitutional analysis, the majority, in my view, errs seriously.

The source of today's error was the subject of a caution by Mr. Justice FRANKFURTER: "Constitutional provisions are often so glossed over with commentary that imperceptibly we tend to construe the commentary rather than the text. We cannot, however, be too often reminded that the limits on the otherwise autonomous powers of the states are those in the constitution and

not verbal weapons imported into it. 'Taxable event', 'jurisdiction to tax', 'business situs', 'extraterritoriality', are all compendious ways of implying the impotence of state power because state power has nothing on which to operate. These tags are not instruments of adjudication but statements of result . . . ." *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 444, 61 S. Ct. 246, 250 (1940).

The statute[1] provides, in pertinent part: "(b) Every foreign corporation . . . shall be subject to . . . a franchise tax at the rate of five mills upon a taxable value to be determined in the following manner. The actual value of its whole capital stock of all kinds . . . shall be ascertained . . . and shall then be divided into three equal parts." These "three equal parts" refer to three fractions involving the taxpayer's tangible property, wages, and gross receipts. *Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52, 56, 213 A.2d 277, 280 (1965). "All three fractions are designed as measures of corporate activity in the taxing state." *Commonwealth v. Koppers Co.*, 397 Pa. 523, 531, 156 A.2d 328, 333 (1959). Accord, *Commonwealth v. Carheart Corp.*, 450 Pa. 192, 194, 299 A.2d 628, 630 (1973); *Commonwealth v. Columbia Gas & Electric Corp.*, 336 Pa. 209, 8 A.2d 404 (1939).

On its face, the statute contains no special provisions for "multiform business" or "unrelated assets." These doctrines were judicially created to insure that the franchise tax statute, which is "structurally constitutional," would not be applied in unconstitutional ways. *Commonwealth v. Columbia Gas & Electric Corp.*, 336 Pa. 209, 222-25, 8 A.2d 404, 412 (1939). The application of these exceptions must, therefore, be strictly confined to those cases where the constitution requires them.

---

[1] Act of June 1, 1889, P.L. 420, § 21, as amended, 72 P.S. § 1871 (b) (1949).

Which constitutional provisions limit the Commonwealth's power of taxation here? Because appellee's business does not involve the interstate sale of goods or services, no burden on interstate commerce will result from imposition of the tax. Thus, the tax is valid unless it operates to deprive appellee of its property without due process of law. The standard for determining whether a tax so operates was articulated by Mr. Justice FRANKFURTER in *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 444, 61 S. Ct. 246, 249-50 (1940) : "A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if . . . the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society.

". . . The simple but controlling question is whether the state has given anything for which it can ask return."

In the language of our cases, the issue is whether the value of the capital stock, as apportioned by the statutory formula, has "no fair relation to the value of the franchise enjoyed by the corporation" in Pennsylvania. *Commonwealth v. Carheart Corp.*, 450 Pa. 192, 196, 299 A.2d 628, 630 (1973).

The Legislature was thoroughly cognizant of the need to limit the tax to that proportion of the value of the corporation's capital attributable to the Pennsylvania franchise. For this purpose, it devised an apportionment formula taking account of three factors: gross receipts, payroll, and tangible property. As the Court said in *Commonwealth v. Columbia Gas & Electric Corp.*, 336 Pa. 209, 220-21, 8 A.2d 404, 411 (1939) : "If the legislature had chosen to use a single one of these fractions and applied the same to the entire capital stock, certainly it could hardly be contended that it would be without its powers . . . . The use of all three

and the application of each to one-third of the entire capital stock value is simply an attempt to make the ultimate measure to which the tax is to be applied more representative of the actual worth of the franchise to do business and to allow the interplay of the factors to average out the hardship which might arise by reliance upon any single one." See *Maxwell v. Kent-Coffey Mfg. Co.*, 204 N.C. 365, 168 S.E. 397, aff'd mem., 291 U.S. 642, 54 S. Ct. 437 (1933) (upholding income tax statute apportioning 99 per cent of corporation's income to state by means of single factor property formula although corporation sold less than 1 per cent of its products in the state); see generally Note, Developments in the Law—Federal Limitations on State Taxation of Interstate Business, 75 Harv. L. Rev. 953, 1034-35 (1962); Hellerstein, Some Reflections on the State Taxation of a Non-Resident's Personal Income, 72 Mich. L. Rev. 1309, 1319-22 (1974).

The principal burden of excluding extra-state values must fall on the formula devised by the Legislature for that purpose. While it is only an approximate measure of the value of the frachise conferred, the valuation of such a franchise is necessarily imprecise. The statutory method of apportionment may not be displaced by judicially created exclusions unless the statutory formula will produce a result which bears *"no fair relation* to the value of the franchise enjoyed by the corporation." *Commonwealth v. Carheart Corp.*, 450 Pa. 192, 196, 299 A.2d 628, 630 (1973) (emphasis supplied).

In this case, appellee has three groups of assets: two office buildings in Pittsburgh, operated by a hired management firm as rental properties; real property in New York, which is leased to another for the operation of a sand and gravel business; and a large portfolio of cash and marketable investments, constituting roughly 90% of the total assets.

The Commonwealth's computation apportions to Pennsylvania less than 4% of the value of appellee's capital stock.[2]

For the purposes of the apportionment formula, the New York property is treated as a non-Pennsylvania asset and the income produced by that property as non-Pennsylvania income. This treatment drastically reduces the apportionment fractions. In this way, the statutory computation effectively excludes the value attributable to that property without reference to any judicially-created exclusions.

The cause of the apparent difficulty is the investment portfolio, whose "situs" the majority places in

---

[2] Appellee initially filed a return on the basis of the statutory computation, without reference to the doctrines of "multiform business" or "unrelated assets." Its computation was:

(a) Average value of tangible property in Pennsylvania — $ 397,323

Average value of all tangible property — $5,589,375

$$\frac{\$397,323}{\$5,589,375} = .071085$$

(b) Wages, salaries, etc., assignable to Pennsylvania — $ 40

Total wages, salaries, etc. — $ 121,725

$$\frac{\$40}{\$121,725} = 0$$

(c) Gross receipts assignable to Pennsylvania — $ 69,877

Gross receipts from all business — $1,652,956

$$\frac{\$69,877}{\$1,652,956} = .042274$$

.113359
÷ 3
―――――
.037786

$24,155,130 (total value of capital stock) x .037786 = $912,726 at .005 = $4,563.63

The Commonwealth reassessed the value of the capital stock at $35,000,000 but accepted the apportionment fractions. Appellee then sought resettlement on the grounds that only its Pittsburgh real estate was properly includible in computing the value of its Pennsylvania franchise to do business.

New York. The effect of apportioning 4% of appellee's capital stock to Pennsylvania is to allocate to the Pennsylvania franchise one or two percent of the intangible assets of the corporation.[3] In this connection, however, it is necessary to remember: "The rule that property is subject to taxation at its situs, within the territorial jurisdiction of the taxing state, readily understood and applied with respect to tangibles, is in itself meaningless when applied to intangibles which, since they are without physical characteristics, can have no location in space. The resort to a fiction by the attribution of a tax situs to an intangible is only a means of symbolizing, without fully revealing, those considerations which are persuasive grounds for deciding that a particular place is appropriate for the imposition of the tax." *First Bank Stock Corp. v. Minnesota,* 301 U.S. 234, 240-41, 57 S. Ct. 677, 680 (1937).

This Court has also recognized the problems created by the attempt to assign intangibles to a particular location. In *Commonwealth v. Columbia Gas & Electric Corp.,* 336 Pa. 209, 8 A.2d 404 (1939), the appellee challenged the omission of intangible assets from the apportionment formula, and this Court responded: "[T]he intangible worth of a going corporation as well as intangible assets themselves may be said to have some degree of correlation as to situs with tangibles. It was

---

[3] The uncertainty results from a dispute between the taxpayer and the Commonwealth as to the value of appellee's entire capital stock. See note 2 supra.

If the taxpayer's valuation were accepted, the statutory computation would produce an apportioned value of roughly $900,000. The Commonwealth's valuation would produce an apportioned value of about $1,300,000. In either case, approximately $400,000 would be attributable to the Pennsylvania real estate. This would leave $500,000 or $900,000, respectively, attributable to other assets. These amounts constitute about 1.3% and 2.3%, respectively, of the corporation's almost $41,000,000 in intangible assets.

undoubtedly within the power of the legislature to permit this correlation to be worked out through the use of a fraction which considered tangible assets only, leaving a more exact correspondence to be brought about through the interaction and effect of the other fractions composed of gross receipts and payrolls." Id. at 220, 8 A.2d at 411.

To return to the precise question before us, is it fair to include some portion of the intangible assets of the corporation in valuing its Pennsylvania franchise? Essentially the same question was presented in *Ford Motor Co. v. Beauchamp*, 308 U.S. 331, 60 S. Ct. 273 (1939). That case involved a Texas franchise tax measured by the capital of the corporation and apportioned solely by gross receipts.[4] Ford sought to limit the measure of the tax to the $3,000,000 value of its assets within Texas. However, the United States Supreme Court upheld the state's assessment of tax on the $23,000,000 dictated by the apportionment of the corporation's entire capital, holding: "Financial power inherent in the possession of assets may be applied, with flexibility, at whatever point within or without the state the managers of the business may determine. For this reason it is held that an entrance fee may be properly measured by capital wherever located. The weight, in determining the value of the intrastate privilege, given the property beyond the state boundaries is but a recognition of the very real effect its existence has upon the value of the privilege granted within the taxing state." Id. at 336, 60 S. Ct. at 276 (footnote omitted).

---

[4] The Texas apportionment method upheld in *Ford Motor Co.* was far less precise than the three-factor formula provided in the Pennsylvania statute. Were the apportionment here based solely on gross receipts, the value assigned to the franchise would be even larger than that produced by the statutory formula; see note 2 supra.

Surely the enhancement of the intrastate franchise resulting from financial power is at least as great where, as here, the taxpayer is engaged in the business of investing. Further, the statutory apportionment has again given full consideration to the factors suggesting a New York "situs," for both the receipts from the intangible assets and the employees who manage them[5] have been included in the computation as non-Pennsylvania elements.[6]

The Legislature was well aware of the difficulties of assigning a location to intangible assets and chose to utilize an apportionment method based on more readily ascertainable factors. It cannot be said that the valuation produced by that method bears "no fair relation" to the value of appellee's Pennsylvania franchise. The result reached by the majority is an unwarranted departure from the requirements of the act. I dissent.

I would vacate the order of the Commonwealth Court and remand the case for determination of the actual value of appellee's entire capital stock. Once this contested issue is determined, the agreed apportionment fractions resulting from application of the statutory formula may then be applied and the tax computed.

---

[5] While all of appellee's payroll has been allocated to New York, it should be noted that one of appellee's vice-presidents resides in Pennsylvania. Although his principal employment is with another company, it is stipulated: "His value to the taxpayer is with respect to its portfolio of marketable securities (particularly the common stock portion thereof) and the New York . . . operations . . . ."

As the Commonwealth suggests in its brief: "This type of duty [investment management] obviously requires a day-to-day review and, therefore, this individual's functions for [appellee] must have been conducted in part in Pennsylvania." This fact simply underscores the propriety of including a small portion of the investment portfolio in valuing the Pennsylvania franchise.

[6] All of appellee's payroll and all of the investment income (constituting over 77% of appellee's gross receipts) were assigned to non-Pennsylvania sources. See the computation in note 2 supra.