558 A.2d 925
**TRANEL, INC.**
v.
**COMMONWEALTH of Pennsylvania.**
**Appeal of TRANEL, INC.**
Commonwealth Court of Pennsylvania.
Argued March 7, 1989.
Decided May 19, 1989.

Liquor Control Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–471, which of course is not applicable here.

Leon H. Kline, Philadelphia, for appellant.

Matthew W. Tomalis, Bryan E. Barbin, Deputy Attys. Gen., and Ernest D. Preate, Jr., Atty. Gen., Tax Litigation Unit, Office of Atty. Gen., Harrisburg, for Com.

Before CRUMLISH, Jr., President Judge,
McGINLEY, J. (P.), and NARICK, Senior Judge.

NARICK, Senior Judge.

Tranel, Inc. (Taxpayer) has petitioned for review of an order of the Board of Finance and Revenue denying its petition to resettle its Pennsylvania corporate income tax for the fiscal year ending August 31, 1972 (1972 fiscal year).

The parties have filed a detailed stipulation of facts, which we shall briefly summarize. Taxpayer is a New York corporation which owns two principal assets, a high-rise office building in New York and a high-rise office building in Philadelphia. For the 1972 fiscal year, it reported taxable income of $2,024.19 from the Pennsylvania building, resulting in a tax of $242.90. The Taxpayer maintained separate accounting for the New York and Pennsylvania properties and reported its income to Pennsylvania on a multiform basis. The Department of Revenue determined that the Taxpayer should have been using a unitary basis for taxation purposes, including income of $135,602 from the New York property, and settled Taxpayer's account by increasing the income to be apportioned between New York and Pennsylvania by that amount. This increase resulted in a corporate income tax liability of $10,793.11.

The Taxpayer employs management companies as agents in both New York and Pennsylvania to manage its properties. The agents' duties are spelled out in separate management contracts and generally include rental of units, collection of rent, payment of expenses and general maintenance. The personnel employed in the maintenance and operation of both properties are employees of the Taxpayer and not employees of either agent.

For the 1972 fiscal year, Taxpayer filed a consolidated return for federal tax purposes. Separate balance sheets, profit and loss statements, and receipts and expenses for the New York and Pennsylvania properties were included. Taxpayer reported its 1972 fiscal year income to New York

State on a unitary basis, including income earned from its Pennsylvania real estate operations.

The issue we are called upon to decide in this case is whether the Taxpayer is entitled to multiform or unitary tax settlement. The amount of tax due under either method has been stipulated by the parties.

■ The Commonwealth contends that the taxpayer has not met its burden of proving entitlement to multiform tax settlement.[1] While it is clear that a state may not tax value earned outside its borders, *see, e.g., Container Corp. v. Franchise Tax Board*, 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983), the Commonwealth argues that apportionment was proper here under the statute involved and upon the facts of this case.

■ Section 401(3)2.(a) of the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7401(3)2.(a) provided for allocation and apportionment of income generated from within and without the Commonwealth according to a formula designed to calculate the portion of a taxpayer's property, payroll and sales which were attributable to activity within the Commonwealth.[2] If the resulting apportionment does not fairly represent the extent of the taxpayer's business in the Commonwealth, the taxpayer may seek relief under Section 401(3)2.(a)(18), 72 P.S. § 7401(3)2.(a)(18), which allows for separate accounting, and inclusion or exclusion of additional factors or other methods to arrive at an equitable allocation.

Taxpayer here argues that it is entitled to multiform tax treatment because of the local nature of its New York and

1. "In determining the amount of ... net income allocable to the state the burden is on the taxpayer to show by clear and cogent evidence that the taxing formula resulted in extraterritorial values being taxed: *Butler Brothers v. McColgan, Franchise Tax Commissioner of California*, 315 U.S. 501 [, 62 S.Ct. 701, 86 L.Ed. 991 (1942) ]." *Commonwealth v. American Telephone and Telegraph Co.*, 382 Pa. 509, 516, n. 2, 115 A.2d 373, 376, n. 2 (1955).

2. That section has since been amended. As noted above, the calculation of the apportionment is not at issue as the parties have stipulated to the amount of tax due under both unitary and multiform treatment.

Pennsylvania activities. Such treatment, it argues, fairly reflects the extent of its activities in Pennsylvania.

The Commonwealth counters that unitary treatment is appropriate. "If a company is a unitary-business, then a State may apply an apportionment formula to the taxpayer's total income in order to obtain a 'rough approximation' of the corporate income that is 'reasonably related to the activities conducted within the taxing State.'" *Exxon Corp. v. Wisconsin Department of Revenue*, 447 U.S. 207, 223, 100 S.Ct. 2109, 2120, 65 L.Ed.2d 66 (1980). There are two constitutional requirements for determining whether apportionment is proper:

> The Due Process Clause of the Fourteenth Amendment imposes two requirements for such state taxation: a 'minimal connection' or 'nexus' between the interstate activities and the taxing State, and 'a rational relationship between the income attributed to the State and the intrastate values of the enterprise.' ... The tax cannot be 'out of all appropriate proportion to the business transacted by the [taxpayer] in that State.'

*Id.* at 219–20, 100 S.Ct. at 2118–19 (citations omitted).

These requirements were expanded upon by the United States Supreme Court in *Container Corp.* at 166, 103 S.Ct. at 2940:

> At the very least, this set of principles imposes the obvious and largely self-executing limitation that a State not tax a purported 'unitary business' unless at least some part of it is conducted in the State.... It also requires that there be some bond of ownership or control uniting the purported 'unitary business.' ...
>
> In addition, the principles we have quoted require that the out-of-state activities of the purported 'unitary business' be related in some concrete way to the in-state activities. The functional meaning of this requirement is that there be some sharing or exchange of value not capable of precise identification or measurement—beyond the mere flow of funds arising out of a passive investment or a distinct business operation—which renders

formula apportionment a reasonable method of taxation. (Citations omitted.)

The Pennsylvania Supreme Court, in a case pre-dating *Container Corp.*, discussed three factors to be applied in determining whether multiform or unitary treatment is appropriate:

First, if a multistate business enterprise is conducted in a way that one, some or all of the business operations outside Pennsylvania are independent of and do not contribute to the business operations within this State, the factors attributable to the outside activity may be excluded.

Second, in applying the foregoing principle to a particular case, we must focus upon the relationship between the Pennsylvania activity and the outside one, not the common relationships between these and the central corporate structure. Only if the impact of the latter on the operating units or activities is so pervasive as to negate any claim that they function independently from each other do we deny exclusion in this context.

Third, without attempting to preclude exclusion in any given case, we reiterate our statement above that the manufacturing, wholesaling and retailing (or manufacturing and selling) activities of a single enterprise are not fit subjects for division and partial exclusion. On the other hand, a truly divisionalized business, conducting disparate activities with each division internally integrated with respect to manufacturing and selling, may well be in a position to make a valid claim for exclusion.

*Commonwealth v. ACF Industries, Inc.*, 441 Pa. 129, 142–43, 271 A.2d 273, 280 (1970).

Taxpayer argues that multiform treatment is required under the *ACF* analysis because the ownership of property is a purely local activity. Each building, it contends, is separately managed and operated by its local agents, who simply remit net rentals, after operating and maintenance expenses have been paid, to the Taxpayer. It argues that common ownership is the only bond between the New York

and Pennsylvania properties. Taxpayer relies upon four cases as support for its position. As discussed below, we find each to be distinguishable.

In *Commonwealth v. Kirby Estates, Inc.*, 432 Pa. 103, 246 A.2d 120 (1968), a franchise tax case,[3] the Supreme Court rejected the Commonwealth's argument that the taxpayer's securities investment business in Delaware and its ownership of real estate in Pennsylvania constituted a single business—that of investing—for franchise tax purposes. The Court held that the two activities were "unconnected in the traditional sense" in that the taxpayer's activity in connection with the ownership of Pennsylvania real estate "was neither enhanced nor diminished by its securities activity outside Pennsylvania." *Id.*, 432 Pa. at 108, 246 A.2d at 122. The crucial distinguishing factor is that the Taxpayer here is involved in *exactly* the same activity in and outside of Pennsylvania: the ownership and rental of property. In *Kirby Estates*, the Commonwealth had attempted to use an apportionment formula where two distinct operations were involved, linking the two by means of a broad categorization of the type of business activity involved. There was no such attempt here; indeed, it would not have been necessary.

Taxpayer also relies upon *Commonwealth v. Advance–Wilson Industries, Inc.*, 456 Pa. 200, 317 A.2d 642 (1974). In that case, the Supreme Court upheld multiform treatment for a Delaware company, whose principal place of business was in New York, which had two separate operating divisions, Keystone and Electrolyzing. Keystone operated three plants in Pennsylvania for the manufacture and sale of ceramic tiles used in building construction. Electrolyzing had places of business in Illinois and Rhode Island which received used machine parts and plated them, using an electrolyzing process, to extend their useful life. Although the Electrolyzing division conducted business

---

**3.** As the Court noted in *ACF* at 134, 271 A.2d at 276: "[b]oth franchise tax and corporate net income tax (or either) may be involved, but the principles are the same." (Citation omitted.)

throughout the United States, there was no contact between the two divisions, except for certain administrative functions the home office performed for both. Again, *Advance–Wilson* is distinguishable because separate and distinct business activities were carried on by the two divisions therein. The Court held that a common corporate umbrella did not justify unitary treatment since the Electrolyzing division had no. connection with the Pennsylvania operations of Keystone.

Similarly, in *Commonwealth v. Morewood Realty Corp.*, 458 Pa. 204, 327 A.2d 328 (1974), which Taxpayer also cites, the Court allowed multiform treatment where the taxpayer, a Delaware corporation with its principal place of business in New York, owned two buildings in Pittsburgh, a sand and gravel business in New York and a portfolio of securities in New York. As we read *Morewood,* it is contrary to Taxpayer's position, in addition to being distinguishable on the same grounds as *Kirby Estates* and *Advance–Wilson.* First, the business activities in *Morewood* were clearly separate and distinct operations. Second, although Morewood's property in Pittsburgh was managed by a local rental agent, none of the agent's employees were employees of Morewood. Although one director of the corporation lived in Pennsylvania, he did not supervise the Pittsburgh properties. Third, Morewood purchased the Pittsburgh properties in a cash transaction, using no out-of-state assets to secure. the purchase or to act as a reserve for costs on the Pittsburgh property.

The final authority upon which Taxpayer relies is this Court's decision in *Logan Clay Products Company v. Board of Finance and Revenue,* 11 Pa. Commonwealth Ct. 629, 315 A.2d 346 (1974). Unlike the preceding three cases, *Logan Clay Products* involved similar businesses, operated in Ohio and Pennsylvania, which we determined were entitled to multiform treatment. The Ohio company, Logan, manufactured unglazed vitrified clay sewer pipe. It merged with the Pennsylvania company, Graff–Kittaning, which had two divisions. One manufactured drain tile,

building tile and flue liners, while the other manufactured certain types of salt-glazed vitrified clay sewer pipe and flue lining. Among the detailed findings of fact set forth in the opinion are several which distinguish *Logan Clay Products* from the facts of the case before us. After the merger, the Pennsylvania division in that case continued to operate with no significant changes in policy or personnel. Its president received no substantial supervision from the Ohio division. The Pennsylvania division was responsible for its own payroll, insurance, supplies, invoicing, receivables, payables, banking and accounting. Its manager had the right to hire and fire employees. Its president made independent significant operational decisions, such as building a new building, had the authority to make purchases in excess of $100,000, and had control over the acceptance of customers and credit matters relating to them.

When we consider the facts of this case in the context of the factors emphasized in the above-cited authorities, we are convinced that unitary treatment is mandated for this Taxpayer. The business in which Taxpayer is engaged is the ownership and rental of real property, both in Pennsylvania and New York. While local management companies manage the properties on a day-to-day basis, the Taxpayer has reserved significant control over both operations for itself. For example, all personnel involved in the operation and maintenance of the buildings are employees of the Taxpayer itself. Of the $216,943.49 deducted as salaries and wages on Taxpayer's federal tax return for the 1972 fiscal year, $173,360 was attributable to the Pennsylvania property. Further, Taxpayer retained control over major expenses, reserved the right to approve leases and did not obligate its Pennsylvania agent to enforce rental payments. The New York property was acquired with $354,000 cash from Taxpayer's general funds and a $950,000 mortgage. The Pennsylvania property was purchased using $175,000 from Taxpayer's general funds, with Taxpayer assuming two existing mortgages in the amount of $1,190,349.89.

Significantly, neither agent is given the responsibility to make mortgage payments, leading us to infer that the Taxpayer makes them using its general funds, to which both properties contribute.

Finally, we find persuasive the fact that Taxpayer reported its New York taxable income for the 1972 fiscal year on a unitary basis. As the United States Supreme Court noted in *Container Corp.* at 169, 103 S.Ct. at 2942, one component of a fair apportionment formula is that of internal consistency, "that is, the formula must be such that, if applied by every jurisdiction, it would result in no more than all of the unitary business' income being taxed." As the Commonwealth aptly points out, the apportionment percentage assigned to the Taxpayer's business activities in New York, as reported by Taxpayer itself on its New York tax form, was 35.85 percent. The percentage assigned to its business activities here, as calculated by the taxing authorities, is 65.21 percent. While the total of these two percentages is slightly higher than 100 percent, the overage is indeed minor, and as noted above, Taxpayer has stipulated to the precise amount due if we determine that unitary treatment is appropriate, thereby waiving any objection to the apportionment calculation.

For these reasons, we conclude that unitary treatment of this Taxpayer was appropriate, and, accordingly, affirm the order of the Board of Finance and Revenue denying Taxpayer's petition for resettlement.

## ORDER

AND NOW, this 19th day of May, 1989, the order of the Board of Finance and Revenue in the above-captioned matter is hereby affirmed. Exceptions may be filed within thirty (30) days of the date of entry of this order. If no exceptions are entered, the Chief Clerk may enter judgment for the Commonwealth.